CLARK *v.* NEEDHAM.

CONTRACTS—RESTRAINT OF TRADE—VALIDITY.

* One manufacturer agreed with another engaged in the same business, in consideration of $1,500, to cease manufacturing certain articles for one year; the latter having the privilege of renewing the contract for four years more. The agreement was held void as against public policy.

Error to Wayne; Hosmer, J. Submitted October 5, 1900. Decided October 31, 1900.

*Assumpsit* by George D. Clark and William L. Cowles, copartners as Clark & Cowles, against Alvin W. Needham, John A. Gray, and William A. Gray, copartners as the Crescent Machine Company, for rent. From a judgment for defendants on verdict directed by the court, plaintiffs bring error. Affirmed.

* Head-note by GRANT, J.

Plaintiffs are copartners carrying on a manufacturing business in Connecticut. One portion of their business was the manufacture of chaplets, which consist of pieces of wire and a plate riveted to the ends to support cores in castings. Double-headed chaplets are used in making cast-iron boilers and heavier castings. The defendants are copartners carrying on a like business in Michigan, at Detroit. Negotiations were entered into between the parties to induce plaintiffs to cease the manufacture of these chaplets. These negotiations culminated on November 4, 1897, in making the following leases, so called:

"This agreement, entered into this 4th day of November, 1897, between Clark & Cowles, of Plainville, Connecticut, as parties of the first part, and the Empire Wire Nail Company, of Detroit, Michigan, as parties of the second part, witnesseth: The first parties, in consideration of the payments to be made to them as hereinafter stated by the second parties, do hereby lease and let to the said second parties, their heirs, executors, and assigns, all of the machinery of every name and nature now used or belonging to the parties of the first part, in their buildings at Plainville, Conn., or elsewhere, used by them or others for the manufacture of chaplets or anchors, for the term of one year from and after date hereof, with the right in second parties to extend said time one year at a time until the expiration of five years, if the second parties give to first parties thirty days' notice of their intention to extend the time for another year, before the expiration of the current year.

"In consideration of the above and the agreement hereinafter set forth, the second parties agree to pay to the first parties the sum of fifteen hundred dollars per year, payable three hundred dollars in cash, and one hundred dollars each month in advance.

"As a part consideration of the above, and the payment of the sum aforesaid by the second parties, the first parties agree and do hereby bind themselves not to manufacture or sell, or in any way engage in the manufacture or sale of, said chaplets or anchors during the continuance of this lease, except that they may sell to and manufacture for the A. A. Griffing Iron Co. of Jersey City, N. J., double-headed chaplets for their own use. * * *"

The balance of this agreement is immaterial.

" This agreement, entered into this 4th day of November, 1897, between the Empire Wire Nail Co., of Detroit, Michigan, party of the first part, and Clark & Cowles, of Plainville, Conn., parties of the second part, witnesseth : The first party, in consideration of one dollar, receipt of which is hereby acknowledged, and other valuable considerations, received to its full satisfaction of the parties of the second part, does hereby lease and let to the said second parties, their heirs, executors, and assigns, all the machinery of every name and nature now controlled by or belonging to the party of the first part by virtue of a lease from the parties of the second part of even date herewith, situated in the buildings of the parties of the second part at Plainville, Conn., or elsewhere, used by them or others for the manufacture of chaplets or anchors, for the term of one year from and after date hereof, with the right in the second parties to extend said lease for one year at a time until the expiration of five years, for the purpose of manufacturing anything whatever, except chaplets or anchors; it being the intention hereof to permit the parties of the second part, their heirs, executors, or assigns, to use said machinery for any purpose, except the manufacture of said chaplets or anchors."

Defendants paid for one year. It is claimed by the plaintiffs that the agreement was extended for the second year. Defendants claim that it was not. Plaintiffs sued to recover for the cash payment due under the lease, and for the rent for the months of May and June, 1899. The court directed a verdict for the defendants on the ground that the agreement was void as against public policy.

*Anderson & Rackham*, for appellants.

*Thomas T. Leete, Jr.*, for appellees.

GRANT, J. (*after stating the facts*). These two instruments constitute but one instrument, and must be construed together. Briefly stated, the agreement is this: Plaintiffs, in consideration of $1,500, to be paid to them annually, agreed for a period of five years not to manufacture or sell chaplets, except for only one party. Plain-

tiffs' sales were not limited to the place of manufacture, but extended into other States. The plain object of the agreement was to substantially close this part of plaintiffs' business, and to give defendants a monopoly of it. The parties evidently recognized the invalidity of such a contract, put in plain and unequivocal language, and sought to evade it by these two so-called leases. The arrangement was a bare subterfuge to evade the law. Defendants did not buy out plaintiffs' business, machinery, and plant, or lease them for the purpose of continuing their (plaintiffs') business. The result intended and accomplished was to close that part of plaintiffs' business, to throw their employés out of employment, and to deprive the public of any benefit from the continuance of their business. This is not the case of *Beal* v. *Chase*, 31 Mich. 490, where Beal purchased the entire plant, business, and good will of Chase for the purpose of continuing the same business. In that case both the employés and the public derived the same benefit as though the business were to be continued by Chase.

The learned counsel for plaintiffs concede the invalidity of those contracts which are entered into for the express purpose of, and result in, closing one's business for the benefit of a rival business, in throwing employés out of employment, and in depriving the public of the benefit of such business. Such contracts tend to destroy competition and create monopolies, and are void. Plaintiffs, however, seek to avoid the result of this contract on the ground that it is not in general restraint of trade, but is limited as to time and subject-matter. They concede that it is unlimited as to territory, and that the contract, if binding, covers the entire United States. They cite, among other cases, *Maxim-Nordenfelt Guns & Ammunition Co.* v. *Nordenfelt*, 52 Ch. Div. 630, and *Mitchel* v. *Reynolds*, 1 P. Wms. 181. Those cases are, in their facts, the parallel of those in *Beal* v. *Chase;* and *Mitchel* v. *Reynolds* is cited in the learned opinion of Justice CHRISTIANCY in *Beal* v. *Chase* (page 519), to which we refer for a statement and analysis of that case.

Any such contract is invalid, whether the restraint be for one year or any number of years, or is unlimited as to time.   The agreement to close one part of a business is as much against the policy of the law as a contract to close the entire.   The one is as reprehensible as the other. They only differ in degree.   Under this contention a party might agree with one person to close one part of his manufactory, and then agree with a second person to close the other part; the two constituting his entire business.

In *United States* v. *E. C. Knight Co.*, 156 U. S. 1, 16 (15 Sup. Ct. 249), it is said:

"All the authorities agree that, in order to vitiate a contract or combination, it is not essential that its result should be. a complete monopoly.   It is sufficient if it really tends to that end, and to deprive the public of the advantages which flow from free competition."

See, also, *Wright* v. *Ryder*, 36 Cal. 342 (95 Am. Dec. 186); *McMullen* v. *Hoffman*, 174 U. S. 639 (19 Sup. Ct. 839).

This contract is clearly within the inhibition of the laws of the United States (26 U. S. Stat. 209, chap. 647) and the laws of this State (3 Comp. Laws 1897, § 11377). We settled the principle governing contracts of this character in *Western Wooden-Ware Ass'n* v. *Starkey*, 84 Mich. 76 (47 N. W. 604, 22 Am. St. Rep. 686), and further discussion is unnecessary.

Judgment affirmed.

The other Justices concurred.