SAMUEL J. STEWART AND JOHN T. STEWART, PARTNERS AS S. J. STEWART & BROTHER, *Plaintiffs in Error*, v. STEARNS & CULVER LUMBER COMPANY, A CORPORATION, *Defendant in Error*.

1. The principles of the common law, when not modified by express enactments or rules or by the requirements of governmental conditions, are in force as a part of the system of laws and rules of judicial procedure in this State.

2. The statutes of the State indicate a policy to extend and confirm rather than to restrict the common law principles relating to restraint of trade and monopolies.

3. At common law any contract or agreement that in its operation has or may have a tendency to restrain trade, to stifle competition in trade, to create or maintain a monopoly, or to unnaturally control the supply of or to increase the price of or to curtail the opportunity of obtaining useful commodities, to the injury of the public or any considerable portion of the population of any locality, is regarded as contrary to just governmental principles and inimical to the public welfare and therefore against public policy.

4. Contracts or agreements that violate the principles designed for the public welfare are illegal and will not in general be enforced by the courts, in consideration of the principle expressed in the maxim, *in pari delicto potior est conditio defendentis.* The courts will not in general aid either party to enforce an illegal agreement, but will leave the parties where they place themselves with reference to such illegal agreement, except where the law or public policy requires action by the courts, or where the parties are not *in pari delicto*, and other exceptional cases.

5. All the provisions of a contract should be considered and construed with reference to controlling provisions and principles of law. Until the contrary appears from a contract and the circumstances and object of its making, the assumption is that the contract was made for and will accomplish only a lawful purpose; and no strained or unusual construction should be given to a contract so as to render it unlawful.

6. When it appears from a contract or from its operation or results that in its terms or in its full operation it is unlawful, or its operation accomplishes or in reality tends to accomplish an unlawful purpose, whether so intended by the parties thereto or not, the contract will not in general be enforced by the courts.

7. Public policy favors competition in trade, and opposes monopolies and restraints upon trade in useful commodities where the public welfare is injuriously affected. Agreements that in

their operation and effect tend to facilitate, stimulate or promote trade are regarded with favor where they do not directly or indirectly injure the public.

8. Where an agreement is lawful in itself and is so limited as to time, place, subject-matter and purpose as that its operation will afford only necessary and proper protection to the parties in the enjoyment of their rights, and will not materially or really injure the public, the agreement may be enforced, even though it relates to and operates upon trade in useful commodities.

9. Whether a contract in effect unlawfully tends to restrain trade or to a monopoly cannot be ascertained by any accurately defined rules, but must be ascertained from a practical consideration of the circumstances of the case in connection with provisions and principles of law and construction. The validity or invalidity of the contract should be determined by its real tendency with reference to trade and monopoly when in full operation.

10. Where a contract transfers a lawful business, trade or occupation actually engaged in, or a lawful exclusive right, and as an incident thereto it is agreed that the vendor will not for a reasonable time engage in the same or a similar business within a reasonable territory covered by the business, and such agreement does not tend to restrain trade or to a monopoly to the public injury, it may not be contrary to public policy and may be enforced if otherwise legal and binding.

11. A contract not transferring a lawful business, trade, profession or occupation actually engaged in, or a lawful exclusive right, but containing an agreement to relinquish to another a common right not lawfully exclusive, or to refrain from the exercise of a right common to all to engage in a lawful business or occupation, and also containing other agreements that enable the parties, under the circumstances in which the contract will operate, to control or unduly and injuriously influence the trade relations of a considerable portion of a small community as to useful commodities, may be contrary to public policy and unenforceable. Such agreements are not relieved of illegality even if they are ancillary to a lease of a storehouse, if their tendency is to restraint of trade or monopoly to the injury of the public.

12. Where a contract places it within the power of the contracting parties to at least partially control the available supply of commodities useful if not necessary to a considerable portion of the local public, or to unreasonably limit the places where useful articles may be purchased, or to increase the price and consequently to restrain trade, it is substantially injurious to the portion of the public affected thereby, and is an unlawful restraint of trade and tends to monopoly rendering the illegal portions if not the entire contract unenforceable because contrary to public policy.

13. To be unlawful a restraint of trade or a monopoly need not be complete and need not amount to a criminal offense. The test is whether the restraint or monopoly is injurious to the public.

14. If an agreement in a contract is in effect illegal, limitations as to time, place or subjects, and expressed or implied provisions that the purpose of the contract or the agreement is lawful, are immaterial.

15. The inhabitants of a village have a right to protection from injurious restraint of trade and monopoly in useful commodities in the village without reference to the opportunities afforded for obtaining the commodities in a neighboring town.

16. Where a contract for the lease of a storehouse formerly used as a commissary by the owners of a sawmill who employed a large number of persons in a village, contains agreements that the lessor, a corporation, will relinquish its right to establish and maintain a commissary for its employees, will use its influence to induce the employees, loggers and others, to purchase their supplies from the lessees, will issue to its employees merchandise checks against their wages directed exclusively to the lessees, to be redeemed by the lessor through the lessees for cash at par every thirty days if such issue is not illegal, and that the lessees will establish a general store of feed, grain, dry goods, drugs, &c. &c., and will accept as cash the merchandise coupons issued by the lessor, and will pay the lessor every thirty days a commission of five per cent. on gross sales, the necessary tendency of the agreements under the conditions in which the contract will operate is to restrain trade and to a

monopoly to the injury of at least a considerable portion of the public affected by the agreements. The agreements are therefore contrary to public policy and invalid, and will not be enforced by the courts.

This case was decided by Division A.

Writ of Error to the Circuit Court for Santa Rosa County.

## Statement.

The declaration in this case is as follows: "The plaintiffs by their attorneys sue the defendant for that the defendant being the owner and operator of a large saw mill at and in the village of Bagdad in said county and State and employing a great number of employees in the conduct thereof, on the 18th day of September, A. D. 1903, entered into a contract with the plaintiffs, a copy of which is hereto attached marked Exhibit 'A' and made a part hereof, whereby in consideration of the covenants of the plaintiffs therein contained to establish, maintain and carry on in a certain specified store building situate in said village a general mercantile business with a stock of general merchandise of the value of Ten Thousand ($10,000) Dollars or more and to accept as cash the merchandise checks or coupons to be issued by the defendant to its employees and every thirty days to pay the defendant a commission of five per cent upon the gross sales of said business and to maintain a complete and comprehensive double entry set of books for the bookkeeping of said business with permission to the defendant to audit said books, if desired, once a month, the defendant undertook and agreed that it would continuously for and during the period of three (3) years next ensuing the first day of September, A. D. 1903, issue to

its employees from time to time as called for in the ordinary course of business, merchandise coupons or checks for amounts which might be due from it to its said employees which said checks or coupons were to be directed exclusively to the plaintiffs and redeemed every thirty days by the defendant from the plaintiffs at par in cash and to redeem said checks or coupons from and through the plaintiffs only; that the plaintiffs established and maintained the said merchandise business in the said store building with a general stock of merchandise of the kind and value agreed upon for a period of three (3) years next ensuing the date of said contract and fully kept and performed all their covenants in the said contract contained according to the true intent and meaning thereof, yet the defendant disregarding its duty in this behalf and in violation of its said covenants issued monthly during the three (3) years next ensuing the 1st day of September, A. D. 1903, merchandise checks and coupons to its employees which were not directed to the plaintiffs in compliance with the terms of said contract to the aggregate par value of about Five Thousand ($5,-000) Dollars per month, about half of which said checks and coupons were monthly redeemed by the defendant from and through persons other than the plaintiffs although no legal restriction had been placed upon the issuance of said merchandise checks and coupons by reason whereof the plaintiffs have been deprived of the profits they would have made had all of said checks and coupons been redeemed by the defendant from and through the plaintiffs in compliance with the terms of said contract and by reason of which the plaintiffs have been damaged in the sum of Eighteen Thousand ($18,-000) Dollars.

Wherefore plaintiffs sue and claim under this count Eighteen Thousand ($18,000.00) Dollars.

2.   The plaintiffs further sue the defendant for that the defendant being the owner and operator of a large saw mill at and in the village of Bagdad in said county and State and employing a great number of employees in the conduct thereof, on the 18th day of September, A. D. 1903, entered into a contract with the plaintiffs a copy of which is hereto attached marked exhibit 'A' and made a part hereof, whereby in consideration of the covenants of the plaintiffs therein contained to establish, maintain and carry on in a certain specified store building situate in said village a general mercantile business with a stock of general merchandise of the value of ten thousand ($10,000.00) dollars or more and to accept as cash the merchandise checks or coupons to be issued by the defendant to its employees and every thirty (30) days to pay the defendant a commission of five (5) per cent. upon the gross sales of said business and to maintain a complete and comprehensive double entry set of books for the bookkeeping of said business with permission to the defendant to audit said books, if desired, once a month, the defendant undertook and agreed that it would continuously for and during the period of three (3) years next ensuing the first day of September, A. D. 1903, issue to its employees from time to time as called for in the ordinary hours of business merchandise coupons or merchandise checks for amounts which might be due from it to its said employees, which said checks or coupons were to be directed exclusively to the plaintiffs and redeemed every thirty (30) days by the defendant from the plaintiffs at par in cash and to redeem said checks or coupons from and through the plaintiffs only and to use its influence to induce its employees, loggers and oth-

Stewart & Bro. v. Sterns & Culver L. Co.—Statement of Case.

ers to purchase their supplies of the plaintiffs while the
plaintiffs remained in possession of the said store; that
the plaintiffs established and maintained the said mer-
cantile business in the said store building with a general
stock of merchandise of the kind and value agreed upon
for and continuously during the period of three years
next ensuing the date of said contract and paid to the
defendant the commission agreed upon and kept and
maintained a complete and comprehensive double entry
set of books for the bookkeeping of said business and
permitted the defendant to audit said books once a month
when so desired and fully kept and performed all of
their covenants in the said contract contained according
to the terms and the true intent and meaning thereof,
yet the defendant disregarding its duty in this behalf and
in violation of its covenants failed, neglected and refused
to use its influence to induce its employees, loggers and
others to purchase their supplies of said plaintiffs during
said period, but on the contrary issued monthly during
the three (3) years next ensuing the first day of Sep-
tember, A. D. 1903, merchandise checks and merchandise
coupons to its employees which were not directed to the
plaintiffs to the aggregate par value of about Five Thou-
sand ($5,000.00) Dollars per month and entered into
competition with the plaintiffs in redeeming the said
checks and coupons so issued as aforesaid; and the de-
fendant redeemed monthly from and through persons
other than the plaintiffs about one-half (1-2) of the
checks and coupons so issued as aforesaid, that is to say
merchandise checks and coupons aggregating at par value
about two thousand five hundred ($2,500) Dollars per
month although no legal restriction had been placed upon
the issuance of such merchandise checks and coupons by
reason whereof the plaintiffs have been deprived of the

profits they would have made had all of said checks and coupons been redeemed by the defendant in compliance with the terms of said contract and by reason of which the plaintiffs have been damaged in the sum of Eighteen Thousand ($18,000.00) Dollars.

Wherefore plaintiffs sue and claim under this count Eighteen Thousand ($18,000.00) Dollars.

3. The plaintiffs by their attorneys further sue the defendant for that the defendant being the owner and operator of a large saw mill at and in the village of Bagdad in said county and State and employing a great number of employees in the conduct thereof, on the 18th day of September, A. D. 1903, entered into a contract with the plaintiffs, a copy of which is hereto attached marked Exhibit 'A' and made a part hereof, whereby in consideration of the covenants of the plaintiffs therein contained to establish, maintain and carry on in a certain specified store building situate in said village a general mercantile business with a stock of general merchandise of the value of Ten Thousand ($10,000.00) Dollars or more and to accept as cash the merchandise checks or coupons to be issued by the defendant to its employees and every thirty (30) days to pay the defendant a commission of five (5) per cent upon the gross sales of said business and to maintain a complete and comprehensive double entry set of books for the book-keeping of said business with permission to the defendant to audit said books, if desired, once a month, the defendant undertook and agreed that it would continuously for and during the period of three (3) years next ensuing the first day of September, A. D. 1903, issue to its employees from time to time as called for in the ordinary hours of business merchandise coupons or merchandise checks for amount which might be due from it to its

said employees which said checks or coupons were to be directed exclusively to the plaintiffs and redeemed every thirty (30) days by the defendant from the plaintiffs at par in cash and to redeem said checks or coupons from and through the plaintiffs only and to use its influence to induce its employees, loggers and others to purchase their supplies of the plaintiffs while they were in possession of the said store as aforesaid; that the plaintiffs established and maintained the said mercantile business in the said store building with a general stock of merchandise of the kind and value agreed upon for and during a period of three (3) years next ensuing the date of said contract and paid to the defendant every thirty days a commission of five (5) per cent upon the gross sales of said business aggregating in all about Twelve Thousand ($12,000.00) Dollars and maintained and kept a complete and comprehensive double entry set of books for the bookkeeping of said business with permission to the defendant to audit said books once a month when desired and fully kept and performed all of their covenants in the said contract contained according to the terms and true intent and meaning thereof, yet the defendant disregarding its duty in this behalf and in violation of its said covenants failed and refused to use its influence to induce its employees, loggers and others to purchase their supplies of the plaintiffs during said period, but on the contrary and in violation of its expressed stipulations in said contract issued monthly during the three (3) years next ensuing the first day of September, A. D. 1903, merchandise checks and coupons to its employees which were not directed to the plaintiffs to the aggregate par value of about Five Thousand ($5,-000.00) Dollars per month and entered into competition with the plaintiffs in the redemption of said merchandise

checks and coupons and monthly redeemed from and through persons other than the plaintiffs said merchandise checks and coupons aggregating at the par value of about Twenty-five hundred ($2,500) Dollars per month although no legal restrictions had been placed upon the issuance of said merchandise checks and coupons by reason whereof the plaintiffs become and are entitled to have returned to them the commission so paid by them to the defendant as aforesaid of Twelve Thousand ($12,000) Dollars.

Wherefore the plaintiffs sue and claim under this count Twelve Thousand ($12,000) Dollars.

4. The plaintiffs by their attorneys sue the defendant for that the defendant being the owner and operator of a large saw mill at and in the village of Bagdad in said county and State and employing a great number of employees in the conduct thereof, on the 18th day of September, A. D. 1903, entered into a contract with the plaintiffs, a copy of which is hereto attached marked Exhibit 'A' and made a part hereof, whereby in consideration of the covenants of the plaintiffs therein contained to establish, maintain and carry on in a certain specified store building situate in said village a general mercantile business with a stock of general merchandise of the value of Ten Thousand ($10,000) Dollars or more and to accept as cash the merchandise checks or coupons to be issued by the defendant to its employees and every thirty days to pay the defendant a commission of five per cent upon the gross sales of said business and to maintain a complete and comprehensive double entry set of books for the bookkeeping of said business with permission to the defendant to audit said books, if desired, once a month, the defendant undertook and agreed that it would continuously for and during the period of three (3)

years next ensuing the first day of September, A. D. 1903, issue to its employees from time to time as called for in the ordinary course of business, merchandise coupons or checks against their wages for amount which would thereafter become due and payable from it to its said employees, which said checks or coupons were to be directed exclusively to the plaintiffs and redeemed every thirty days by the defendant from the plaintiffs at par in cash and to redeem said checks or coupons from and through the plaintiffs only; that the plaintiffs established and maintained the said mercantile business in the said store building with a general stock of merchandise of the kind and value agreed upon for a period of three (3) years next ensuing the said first day of September and fully kept and performed all their covenants in the said contract contained according to the true intent and meaning thereof, yet the defendant disregarding its duty in this behalf and in violation of its said covenants issued monthly during the three (3) years next ensuing the 1st day of September, A. D. 1903, merchandise checks and coupons to its employees against their wages thereafter to become due and payable, which were not directed to the plaintiffs in compliance with the terms of said contract to the aggregate par value of about Five Thousand ($5,000) Dollars per month, a large number of which said checks and coupons were monthly redeemed by the defendant from and through persons other than the plaintiffs and the said employees of defendant to which said checks and coupons were issued, and a large number of which it redeemed monthly from said employees before the wages for which they were issued became due and payable, although the wages for which they were issued became due and payable, although no legal restrictions had been placed upon the issuance of said merchandise

checks and coupons. That had the said defendant performed its said contract according to the true intent and meaning thereof, the said' plaintiffs would have derived large profits from trade which would have come to them from the said employees of defendant to whom said checks or coupons were issued, and from the redemption of said checks or coupons to them by said defendant; that by reason of the premises the plaintiffs have been deprived of the said profits they would have made had all checks and coupons been redeemed by the defendant only from the parties to whom they were issued when the wages for which they were issued became due or from and through the plaintiffs in compliance with the terms of said contract, to their damage in the sum of Eighteen Thousand ($18,000) Dollars. Wherefore plaintiffs sue and claim Eighteen Thousand ($18,000) Dollars.

MAXWELL & REEVES,
*Attorneys for Plaintiffs."*

*"Exhibit 'A.'*

Memo of agreement made by and between Stearns & Culver Lumber Company, a corporation organized under the laws of Illinois, having their place of business at Bagdad, Florida, party of the first part, and the firm of S. J. Stewart & Bro., a partnership consisting of Samuel J. Stewart and John T. Stewart, of Milton, State of Florida, party of the second part.

Witnesseth: The party of the first part, the said Stearns & Culver Co., for and in consideration of the covenants hereinafter named, does hereby lease for a term of three years from Sept. 1st, 1903, to the said Stewart Bros., the following property, to-wit: Store building and store fixtures now located on Block 5,

village of Bagdad, and facing Water Street, now known as 'The Bagdad General Store,' and formerly as commissary of Simpson & Co.

The said Stearns & Culver Co. hereby agrees to and does relinquish to the said Stewart Bros. its right to the establishment and maintenance of a commissary as a depot of supplies for its employees and agrees to use its influence to induce employees, loggers and others to purchase their supplies of said Stewart Bros., while in possession of the store aforesaid.

Said Stearns & Culver Co. furthermore agrees to issue to its employees from time to time as called for in the ordinary hours of business, merchandise coupons or merchandise checks against their wages, which shall be redeemed by the said Steans & Culver Co. at par in cash to the said Stewart Bros. every thirty days, and to issue such coupons or checks exclusively to said Stewart Bros. If, however, legal restrictions are placed upon the issuance of such coupons or checks, the said Stearns & Culver Co. shall be released from this obligation, and some other method adopted of directing trade to said Stewart Bros.

It is agreed that said Stearns & Culver Co. shall equip the said store with electric lights, and furnish lighting current without charge, in the same manner and degree as they furnish their own office, but not to any further extent. The replacement of bulbs, etc., to be at the expense of Stewart Bros.

Such warehouse room as is available for the purpose shall be furnished Stewart Bros. by Stearns & Culver Co. free of charge, but the said Stearns & Culver Co. does not obligate itself to build any warehouse or other building for the said Stewart Bros. except as shall be agreed upon separately from this agreement.

The party of the second part, the said Stewart Bros. hereby agree to establish and maintain a first-class and up-to-date general store on the premises described above, and to carry therein a stock of not less than $10,000 or $12,000, and as much more as good conservative judgment would dictate, of feed, grain, dry goods, boots and shoes, furniture, drugs, stationery, notions, hardware, etc., and to pay the said Stearns & Culver Co. every thirty days a commission of five per cent upon the gross sales of said business.

It is agreed by Stewart Bros. that they will accept as cash the merchandise coupons or checks issued by the said Stearns & Culver Co. to its employees, and directed to them, and handle same in accordance with the regulations of the said Stearns & Culver Co. regarding the handling of said coupons.

The said Stewart Bros. furthermore agrees to open up and maintain a complete and comprehensive double entry set of books for the bookkeeping of the business of the store before mentioned, and extend permission to said Stearns & Culver Co. to audit these books once each month, if desired, in order to determine the amount of gross sales, which is a part of the consideration of this instrument.

Should the said Stearns & Culver Co. consider it desirable to change the location of the store referred to in this agreement to some other lot in Bagdad, the said Stewart Bros. hereby extend their permission to such removal, and it will in no wise affect the terms and conditions of this agreement.

This contract is to remain in force for a period of three years from the first day of September, 1903, unless by failure on the part of either party to perform any or all

of the above articles of agreement, it should be earlier terminated.

Witnesseth our hands and seals this eighteenth day of September, A. D. 1903.

STEARNS & CULVER LUMBER COMPANY,

*By W. A. Galliver.*

S. J. STEWART & BRO.

*By S. J. Stewart.*

JOHN F. STEWART.

*Bills of Particulars.*

Bill of particulars to 1st and 2nd counts.

To loss of 20 per cent profit on merchandise
checks and coupons of the aggregate par value
of $90,000.00....................................$18,000 00

*Bill of Particulars to 3rd Count.*

To 5 per cent commissions paid by the plaintiffs
to the defendant on gross sales........$12,000 00"

The defendant demurred to the several counts of the declaration separately because neither "sets forth any enforceable contract made by the defendant."

After sustaining the demurrer, the plaintiffs not desiring to amend, judgment was entered for the defendant, and the plaintiffs took writ of error assigning as error the sustaining of the demurrer and the judgment for defendant.

*Maxwell & Reeves,* for plaintiff in error.

*Blount & Blount & Carter,* for defendant in error.

WHITFIELD, J.—*(After stating the facts)*—The contract upon which the action is brought contains a lease

to a partnership of a store house formerly used as a commissary in a village where a corporation, the owner of the store house, it is alleged, owned and operated a large saw mill employing a great number of persons. The contract also contains an agreement by the corporation to relinquish its right to establish and maintain a commissary for its employees, to use its influence to induce the employees, loggers and others to purchase their supplies from the partnership, and to issue to its employees merchandise checks against their wages directed exclusively to the partnership, to be redeemed by the corporation through the partnership for cash at par every thirty days, if such issue is not illegal. The partnership agreed in the contract to establish a general store carrying $10,000 or more of feed, grain, dry goods, boots and shoes, furniture, drugs, stationery, notions, hardware, etc., to accept as cash the merchandise coupons issued by the corporation, and to pay the corporation every thirty days a commission of five per cent upon the gross sales of the business. The partnership alleges that its covenants have been performed, and that the covenants of the corporation have been violated, for which damages are claimed.

The demurrer to the declaration presents the question whether the contract is one that the courts will enforce; *i. e.,* whether it tends to create a monopoly, to restrain trade or to stifle competition, so as to make it violative of the laws or of public policy of this State.

The principles of the common law, when not modified by express enactments or rules or by the requirements of governmental conditions, are in force as a part of the system of laws and rules of judicial procedure in this State.

There are no express declarations or modifications of the principles of the common law relating to restraints of trade and monopolies in this State, except as have been

made by Congress in its authority as to interstate and foreign commerce, and by sections 3160-4 Gen. Stats. relating to restraints in sales of fresh meat, and by sections 3233, 3514, 3515, General Statutes, relating to coercing employees and to criminal conspiracies and to combinations against workmen, and perhaps some other provisions, all of which indicate a policy to extend and confirm rather than to restrict the common law principles relating to restraint of trade and monopolies.

The industrial and governmental conditions here do not require a relaxation of the just principles of the common law in reference to monopolies and restraints of trade; but, on the contrary, the spirit and purpose of our government and institutions, and the commercial conditions of the country require the maintenance and enforcement of those principles for the protection of freedom in trade and equal opportunities to all under like conditions, so that the welfare of the public or any considerable portion thereof may not be unjustly subordinated to the purposes and advantage of one or more individuals.

At common law any contract or agreement that in its operation has or may have a tendency to restrain trade, to stifle competition in trade, to create or maintain a monopoly, or to unnaturally control the supply of or to increase the price of or to curtail the opportunity of obtaining useful commodities, to the injury of the public or any considerable portion of the population of any locality, is regarded as contrary to just governmental principles and inimical to the public welfare and therefore against public policy.

Contracts or agreements that violate the principles of public policy designed for the public welfare are illegal and will not in general be enforced by the courts in con-

sideration of the principle expressed in the maxim, *in pari delicto potior est conditio defendentis.*

The courts will not in general aid either party to enforce an illegal agreement, but will leave the parties where they place themselves with reference to such illegal agreement, except where the law or public policy requires action by the courts, or where the parties are not *in pari delicto,* and perhaps in other cases not pertinent here.   See 9 Cyc. 546; Broome on Common Law, 355; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. Rep. 839; Burton v. McMillan, 52 Fla. 469, 42 South. Rep. 849, 8 L. R. A. (N. S.) 991; 2 Hughes on Proc. 679; 2 Eddy on Combinations, § 688, 737; I Eddy on Combinations, § 336, 585; Beach on Monopolies, p. 47; United States v. Addyston Pipe & Steel Co., 54 U. S. App. 723, 85 Fed. Rep. 271, 29 C. C. A. 141, 46 L. R. A. 122; Chapman v. Haley, 117 Ky. 1004, 80 S. W. Rep. 190, 4 Am. & Eng. Anno. Cases 712.

All the provisions of a contract should be considered and construed with reference to controlling provisions and principles of law.   Until the contrary appears it is assumed that a contract is made for and will accomplish only a lawful purpose; and no strained or unusual construction should be given to a contract so as to render it unlawful.   But when it appears from a contract and the circumstances under which it was made, and from its purposes, operation and results, that in its terms or in its full operation it is unlawful, or its operation accomplishes or in realty tends to accomplish an unlawful purpose, whether so intended by the parties thereto or not, the contract will not be enforced by the courts.

Public policy favors competition in trade, to the end that commodities may be obtained with the greatest convenience and at the lowest possible prices; and opposes

monopolies and restraints upon trade in useful commodities that tend to inconvenience or to control the supply or to higher prices to the injury of the public or any considerable portion thereof in any locality. Agreements that in their operation and effect tend to facilitate, stimulate or promote trade are regarded with favor where they do not directly or indirectly injure the public.

Where an agreement is lawful in itself and is so limited as to time, place, subject-matter and purpose as that its operation will afford only necessary and proper protection to the parties in the enjoyment of their rights, and will not materially or really injure the public, the agreement may be enforced, even though it relates to and operates upon trade in useful commodities.

Whether a contract in its terms or operation is or may be unreasonable because it extends to or may be extended to a longer time or to a greater territory or to other subjects than is reasonably necessary for the protection of the rights of the parties *inter sese,* and whether the public is or may be appreciably injured thereby, cannot be ascertained by any accurately defined rules, but must be determined from a practical consideration of the circumstances of every case as it arises in connection with such general principles of law and of construction as are applicable thereto. The validity of the contract should be determined not by what has been done under it, but by what may be done under it—by what will be its real tendency with reference to trade and monopoly when in full operation.

Where a contract in its terms and in its operation transfers from one party to another a lawful business, trade or occupation actually engaged in, or a lawful exclusive right, and as an incident thereto it is agreed that the vendor will not for a reasonable time engage in the

same or a similar business within a reasonable territory covered by the business, and such agreement does not unreasonably restrict the available supply of, or access to, or raise the price of any useful commodity, or tend to create a monopoly, it may not be against public policy or unlawful, and consequently may be enforced by the courts if otherwise legal and binding.

But a contract not transferring a lawful business, trade, profession or occupation actually engaged in, or not transferring a lawful exclusive right, but containing an agreement to relinquish to another a common natural right not lawfully exclusive, or to refrain from the exercise of a natural right common to all to engage in a lawful business or occupation and other agreements that enable the parties, under the circumstances in which the contract will operate, to control or unduly and injuriously influence the trade relations of a considerable portion of a small community as to necessary and useful commodities, may be opposed to public policy and not enforceable. The fact that the agreements are contained in and are ancillary to a contract of lease of a store house does not relieve them of their illegal effect if their tendency is to restraint of trade or monopoly to the injury of the public.

Where a contract places it within the power of the contracting parties to at least partially control the available supply of commodities useful if not necessary to at least a considerable portion of the local public, or to unreasonably limit the places where useful articles may be purchased, or to increase the price and consequently to restrain trade, it is substantially injurious to the portion of the public affected thereby, and is an unreasonable and consequently an unlawful restraint of trade, and tends to monopoly, rendering the illegal portions, if not

the entire contract, unenforceable because contrary to public policy.

Where the necessary tendency of a contract is to a monopoly and to a restraint of trade that is appreciably injurious to the public, the monopoly or restraint of trade need not be complete, and the degree of injury to the public inflicted or reasonably anticipated is immaterial. And this is so even though the agreement is ancillary to a lease of property or other lawful main purpose of the contract.

If an agreement contained in a contract is in effect illegal, it is not rendered legal by a direct or implied provision in the contract that its purpose is a lawful one, or by the fact that the illegal agreement is an incident to the accomplishment of a lawful purpose.

The illegality in the agreement or in its operation need not amount to a criminal offense. The test is whether the agreement in full operation will be injurious to the public welfare. If so, it will not be enforced.

The inhabitants of a village have a right to protection from injurious restraint of trade and monopoly in useful commodities in the village without reference to the opportunities afforded for obtaining the commodities in a neighboring town.

Where an agreement in operation has a necessary tendency to restrain trade or to monopoly to the appreciable injury of the public, limitations as to time, place or subjects contained in the agreement are immaterial.

The validity or invalidity of an agreement that in operation tends to restrain trade or to monopoly is in general determined by the element of whether it is or is not injurious to the public. If injurious in any perceptible degree to any considerable portion of the public the agreement is contrary to public policy and will not be

enforced.    If not so injurious it may be enforced if otherwise legal and binding.    See Horner v. Graves, 7 Bing. 735, 20 E. C. L. 310; Clark v. Needham, 125 Mich. 84, 83 N. W. Rep. 1027, 84 Am. St. Rep. 559; Crawford v. Wick, 18 Ohio St. 190, S. C. 98 Am. Dec. 103 ; Pocahontas Coke Co. v. Powhatan Coal & Coke Co., 60 West Va. 508, 56 S. E. Rep. 264, 9 Am. & Eng. Ann. Cas. 667, 10 L. R. A. (N. S.) 268; Central Ohio Salt Co. v. Guthrie, 35 Ohio St. 666; United States v. Addyston P. & S. Co., 85 Fed. Rep. 271, 29 C. C. A. 141; United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. Rep. 249; Tuscaloosa Ice Mfg. Co. v. Williams, 127 Ala. 110, 28 South. Rep. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125; Fullington v. Kyle Lumber Co., 139 Ala. 242, 35 South. Rep. 852; Webb Press Co. v. Bierce, 116 La. Ann. 905, 41 South. Rep. 203; 27 Cyc. 898; 20 Am. & Eng. Ency. Law (2nd ed.) 849; 24 Am. & Eng. Ency. Law (2nd ed.) 849; Nester v. Continental Brewing Co., 161 Pa. St. 473, 29 Atl. Rep. 102, 24 L. R. A. 247; Harding v. American Glucose Co., 182 Ill., 551, 55 N. E. Rep. 577, 74 Am. St. Rep. 189, and notes; Oregon Steam Nav. Co. v. Winsor, 20 Wall. (U. S.) 64, L. Ed. 315; Merriman v. Cover, 104 Va. 428, 51 S. E. Rep. 817; Jones v. Clifford's Exec., 5 Fla. 510; Hocker v. Western Union Tel. Co., 45 Fla. 363, 34 South. Rep. 901; 1 Page on Contracts, Secs. 373, 434; 7 Current Law, 787; Slaughter v. Thacker Coal & Coke Co., 55 West Va. 642, 47 S. E. Rep. 247; 2 Am. & Eng. Anno. Cases 335 and notes; Keene Syndicate v. Wichita Gas, Electric Light & Power Co., 69 Kan. 284, 76 Pac. Rep. 834; 2 Am. & Eng. Anno. Cases 949; 9 Am. & Eng. Anno. Cases 907; Anderson v. Shawnee Compress Company, 17 Okla. 231, 87 Pac. Rep. 315.

In this case no established business, trade, profession or

occupation, or lawful exclusive right, was transferred with accompanying good will, but the contract contains a lease of a store house and an agreement to relinquish a right common to all to establish a general store in a village, coupled with other agreements that in practical operation necessarily tend to substantially restrain freedom of trade and to monopoly whether so intended by the parties or not.

Assuming that the corporation had the right to establish and maintain a general store, it obviously had no lawful exclusive right to do so in the village named by the contract, and the agreement to relinquish a right common to all to establish and maintain a general store in the village, if of any benefit to the other contracting party, was not necessary to the protection of the rights in the lease of the store house. When this agreement to relinquish a right common to all is taken in connection with the agreement as to the exclusive issuing and redeeming by the contracting parties of merchandise checks to a great number of persons in a village, employees of one of the parties, and with the character of goods the checks would purchase, the relation of the contracting corporation to its employees, the great number of the employees operating in a village, the agreement to induce the employees, loggers and others to purchase their supplies at the one place, and the agreement to pay five per cent. commission on gross sales, it is manifest that the inevitable tendency of the agreement, though ancillary to a lease of a store house, is to restrain trade, to stifle competition, to increase prices of useful if not necessary commodities, and to create and maintain a monopoly, so as to injure in some appreciable degree at least a considerable portion of the local public whether such result was intended or not. If the restraint of trade

Fla.—38.

or the monopoly the contract tends to effectuate, in its operation, is injurious to the public to any appreciable degree, the limitations, expressed or implied, as to time, place or objects are immaterial.

A mere influencing of trade in a lawful manner is not necessarily illegal. The issuing by an employer to employees of "merchandise checks against their wages" to be redeemed exclusively through a merchandise house of another party as alleged in this case may not *ipso facto* and necessarily be illegal under all circumstances; but under the circumstances of this case such a course of dealing, whether so intended or not, tends to aid in restraining trade and in maintaining a monopoly to the injury of a large number of persons. It does not appear from the record whether the merchandise checks were to be issued before or after wages were due and payable, nor does it seem to be material in this case. Even if it should appear that the village where this contract operated is near a larger town, it would not redeem the contract, since the freedom of trade may be restrained and a monopoly assisted to the injury of a local public by curtailing the convenience of the public in procuring supplies of useful commodities. Whether the corporation was or was not able to pay its employees in cash does not appear to be material in this case. No element of partnership express or implied appears from the contract or the declaration if that would relieve the agreements of invalidity.

While the rent for a store house may properly be a percentage of the business done in the store house, yet in this case the agreement to pay five per cent. of gross sales, taken in connection with the other parts of the contract and conditions under which it was to operate and with the claim for commissions paid, indicate that

such a percentage covers not only the store rent but also profits from a business capable of being so conducted as to in some substantial degree restrain trade and maintain a monopoly to the injury of at least an appreciable part of the public in the locality where the business was conducted; and the intention of the parties is of no controlling force.

The inevitable tendency of the contract operating under the circumstances alleged in the declaration is to restrain trade, to stifle competition, and to a monopoly, to the injury of at least a considerable portion of the public affected by the contract; and the contract is consequently violative of the public policy of the State or the implied principles of law recognized as existing in this State on this subject for the general welfare. This being so, courts of justice will not aid the parties in enforcing the invalid agreements, and the demurrer to the declaration was properly sustained.

The judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J. concur

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.