## Barrone, et al. v. Moseley Bros.

(Decided June 16, 1911.)

Rule to Punish Appellants for Contempt for Violating Order of Injunction.

### Appeal from Warren Circuit Court.

1. Contempt—In contempt proceedings for violating an order of injunction there are only two questions for decision: (1) Did the court have jurisdiction to make the order of injunction; and, (2) Has it been violated?

2. Same—If the defendant, who has been enjoined, is in doubt as to the scope or extent of the injunction, he should not wilfully disregard or violate it with a view of testing such question, but should apply to the court for a modification or construction of its order.

THOMAS & THOMAS and SIMS & RODES, for appellants.

GUY H. HERDMAN and GRIDER & HARLAN, for appellees.

Opinion of the Court by Judge Miller—Sustaining rule.

This is a proceeding, by rule. under section 286 of the Civil Code of Practice to punish the appellants, B. J. ("Bert") Barrone and The Bowling Green Steam Laundry Company, for failing and refusing to obey the order of injunction entered herein on April 25, 1911, by the Judge of the Warren Circuit Court. In 1908 "Bert" Barrone was engaged in the laundry business in Bowling Green. On October 22d of that year, he sold a portion of his laundry business to Moseley Bros., and bound himself and his successors in the business not to engage in the laundrying of shirts, collars and cuffs in the City of Bowling Green and adjacent territory. He reserved, however, the right to do family washing, and shirts, collars and cuffs sent in from transient guests of hotels, and known as "hotel specials." The consideration for the contract was $1,600, which included the purchase price of certain machinery which Moseley Bros. bought from Barrone for the laundrying of shirts, collars and cuffs.

"Bert" Barrone had given his note for $7,000, dated in January, 1908, to his brother, J. J. ("Joe") Barrone, and to secure the payment thereof "Bert" Barrone gave his brother a mortgage upon the laundry property. "Joe" Barrone enforced his mortgage lien at the February term of the court in 1909, and bought in the property; and, in March of that year he organized the appellant corporation, The Bowling Green Steam Laundry Company (hereinafter called the Company), with a capital stock of $8,000, for the purpose of taking over the laundry business of "Bert" Barrone. "Joe" Barrone was a bachelor, and worth perhaps $25,000. In organizing the corporation he gave his brother "Bert" three of the 80 shares of stock; to his brother, R. J. (Raphael) Barrone he gave thirty-five shares of stock; he sold seven shares to his brother-in-law, J. W. Gilbert; and he kept thirty-five shares which he subsequently gave to his mother, Louise Barrone. Shortly thereafter "Joe" Barrone died, in April, 1909. Conceiving that the formation of the company was a mere scheme for the purpose of evading the contract which "Bert" Barrone had made with Moseley Bros., and claiming that the company was doing work of the kind prohibited by the contract, Moseley Bros. brought their suit in the Warren Circuit

Court against "Bert" Barrone and the company for the purpose of enjoining them from doing the prohibited work. By its judgment of April 25, 1911, the Warren Circuit Court sustained the prayer of Moseley Bros. in the following language:

"The court being advised adjudges that the contract sued on is legal and in full force and effect, and that the defendant, The Bowling Green Steam Laundry Company, is liable under said contract; that the said organization was organized for the purpose of evading the contract sued on herein, and it is adjudged by the court that the plaintiffs recover of the defendants, B. J. Barrone and The Bowling Green Steam Laundry Company the sum of two hundred and twenty-five ($225) dollars for damages on account of the breach and violation of said contract with interest at 6 per cent. from date.

"It is further adjudged by the court that the organization and operation of said corporation was done for the purpose of evading the contract sued on herein, of which purpose the organization and stockholders had full knowledge at the time of the organization, and it is, therefore ordered and adjudged by the court that the defendant, B. J. Barrone, be and he is hereby perpetually enjoined and restrained from engaging in the business of laundrying shirts, collars and cuffs in the city of Bowling Green and the territory adjacent to the city of Bowling Green, Ky.; this injunction not applying to laundrying shirts, in family washings, nor shirts, collars and cuffs when they shall be sent in from hotels as hotel specials; and it is further ordered and adjudged that the defendant, The Bowling Green Steam Laundry Co., a corporation, be perpetually enjoined and restrained from engaging in the business of laundrying shirts, collars and cuffs in the City of Bowling Green, Ky., this injunction not applying to the laundrying of shirts in family washings nor to shirts, collars and cuffs sent in from hotels and hotel specials, and it is adjudged that plaintiffs recover of defendants their costs herein expended. To all of which defendants object and except, and pray an appeal to the Court of Appeals, which is granted."

"Bert" Barrone and the Company superseded that judgment, but have not filed the record in this court. Upon motion of Moseley Bros. the supersedeas was discharged by an order of this court on May 24, 1911. Bar-

rone v. Moseley Bros., 143 Ky., 812. Appellants had notice of that order not later than the day after it was entered, and perhaps on the 24th Moseley Bros. have filed affidavits to the effect that "Bert" Barrone and the Company, have not only violated the order of injunction from the day it was entered, April 24, 1911, up to May 24, 1911, when the supersedeas was discharged, but that they have since continued to violate the injunction by doing the prohibited work, particularly upon May 26th, 27th and 29th. The appellants admit that they have violated the injunction pending the appeal up to the discharge of the supersedeas on May 24th, and several of their customers have filed affidavits showing that appellants did work of the prohibited character on May 26th, 27th and 29th. In his response "Bert" Barrone says that he believed, and was so advised by counsel that the supersedeas suspended the judgment, and that he honestly believed that he had the right to do the prohibited work up to May 27th; that on May 27th the stockholders of the Company sold its property and business to Raphael J. Barrone for $6,500 cash, and dissolved the corporation; and, that any business that was done after the 27th was done by Raphael J. Barrone, and not by the appellants. Quite a number of affidavits have been filed to show that the sale to Raphael J. Barrone was in good faith, and that the appellants are in no way responsible for what he may thereafter have done. Raphael J. Barrone was the president of the Company, and its surety upon the supersedeas bond. "Bert" Barrone admits, however, that his brother, Raphael J. Barrone has requested him to remain temporarily at the laundry for the purpose of giving Raphael some acquaintance and knowledge of the business, and show him how to conduct it; and that he has consented to do so, with the understanding that he will be paid a fair and reasonable wage during the time he shall thus assist his brother at the laundry. It subsequently appeared that he is getting $25 per week, the same salary that was paid him by the Company. He denies, however, that he has had any interest in the laundry, its property or its business, since May 27th. The response of the Company is to the same effect.

It is also insisted that Raphael J. Barrone, the purchaser and present owner of the business, and J. W. Gilbert, a former director of the Company, are guilty of

contempt for aiding "Bert" Barrone in violating the order, although they are not parties of this appeal. Since, however, the rule is confined to "Bert" Barrone and the Company, the decision will apply to them only.

This case is very similar, in its controlling facts, to the case of the Kentucky Heating Company v. Louisville Gas Company, 22 Ky. Law Rep., 1140, where this court said:

"The case has not yet been docketed in this court and the merits of the controversy are not, therefore, before us. The only thing before us is the judgment of the court below which is not superseded, and while in force must be obeyed. It is the duty of the court to enforce obedience to it. In this we have no election. It is not only the duty of appellant to obey the judgment, but it is also the duty of all good citizens to co-operate with it in securing this obedience, and all those who obstruct it in any way in obeying the judgment are in contempt of this court no less than appellant. Our whole social fabric rests upon the dignity and authority of the law, and its mandates must be respected and obeyed by all."

The question for decision is, not whether the judge of the Warren Circuit Court erred in granting the injunction, but whether his order has been violated. If that court had jurisdiction to make the order, the defendants there, who are appellants here, subjected themselves to proceedings for contempt for violating the order of injunction, whether the court erroneously made the order, or not. In contempt proceedings there are only two questions for decision: (1) Did the court have jurisdiction to make the order of injunction; and (2) Has it been violated? Moreover, as was well said in Smith v. Miller, 122 Ky., 294:

"If the defendant is in doubt as to scope or extent of the injunction, he should not willfully disregard or violate it with a view of testing such question, but should apply to the court for a modification of construction of its order."

The affidavits show that "Bert" Barrone and the Company, not only violated the order of injunction up to May 24th, when the supersedeas was discharged, but that it has been continuously violated since that time by the successive owners of the laundry up to the time notice of this rule was given.

It is, therefore, adjudged that the appellants, B. J. Barrone and the Bowling Green Steam Laundry Company, are in contempt, and that each of them pay a fine to the Commonwealth in the sum of $25; and, furthermore, that this appeal shall stand dismissed on the second day of the next September term of this court, unless on or before that day it shall be made to appear to the court that appellants have faithfully and fairly obeyed the judgment of the Warren Circuit Court above referred to; and, at that time such further orders will be made in the matter of the pending motions as the ends of justice may require.  (22 Ky. Law Rep., 1140.)