## Barrone, et al. v. Moseley Bros.

(Decided October 4, 1911.)

### Appeal from Warren Circuit Court.

1. Contract in Restraint of Trade.—A contract in partial restraint of trade will be upheld when it is an incident to and is in support of another contract, or sale, in which the covenantor has an interest which is in need of protection.

2. Same—A contract in restraint of trade will be enforced only when the restraint is no more extensive than is reasonably required to protect the interest of the party in whose favor it is given, and is not so large as to interfere with the interests of the public.

3. Same.—A contract, the sole object of which is to restrain competition, is void.

4. Same—Injunction.—Where a laundry owner sold certain portions of his machinery to a competitor and agreed to abandon,

within a prescribed territory, the class of business which had been done with the machinery which he had sold, he will be enjoined from doing that character of work.

SIMS & RODES and T. W. & R. C. P. THOMAS for appellants.

GRIDER & HARLAN and G. H. HERDMAN for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In May, 1908, and for some time prior thereto, the appellee, B. J. ("Bert") Barrone, was engaged in the laundry business in Bowling Green as manager and owner of the Bowling Green Steam Laundry Co. On October 22, 1908, in consideration of $1,600.00 paid to it by appellees Moseley Bros., the laundry company, by B. J. Barrone, its manager and owner, sold to Moseley Bros., the following described property which it had been using in its laundry business, to-wit: One bosom press; two cuff presses; one yoke press; one N. B. press: one W. P. Tipper; one skinner dampner; one C. and C. ironer; one C. and C. starcher; one Torrence steam dampner; one air pump; one No. Hurricane dry room; one M. hot tube; and one Adams C. and C. dampner. The other material parts of the contract were as follows:

"It is further agreed that the first party, the Bowling Green Laundry Company, is to abandon the shirt, collar and cuff laundry business, it reserving the right, however to do family washing, including shirts, and to launder shirts, collars and cuffs when they shall be sent in with 'hotel specials.'. It being the object of this contract to confine the Bowling Green Laundry Co. to do family laundry and to do special work from the hotels of shirts, collars and cuffs.

"The Bowling Green Steam Laundry Co. binds its lessee that it, or any successor to whom it shall sell, shall be bound by these stipulations so far as the city of Bowling Green, or the territory adjacent to the city of Bowling Green, is concerned.

"The above covenant runs with the property conveyed to (by) the Bowling Green Steam Laundry Co., and takes effect from the delivery of the property."

In May, 1909, the appellees, Moseley Bros., brought this suit against B. J. Barrone and the Bowling Green Steam Laundry Co. to recover damages for an alleged

breach of the contract, and for an injunction against the continued violation thereof.

As defenses to the action the appellants insisted; (1), that the contract unreasonably restrained trade, and is unenforcible; and, (2) that if it be conceded that the contract is valid, it has not, as a matter of fact, been violated.

That there may be a reasonable restraint of trade, is no longer an open question. Sutton v. Head, 86 Ky.,156; Louisville Board of Fire Underwriters v. Johnson, 133 Ky., 197. And, in applying the rule, appellants concede that covenants in partial restraint of trade are now generally upheld as valid when made by the seller of a business not to compete with the buyer in such a way as to decrease the value of the business; by a retiring partner not to compete with the firm; by a partner not to do anything to hinder the business of the partnership; by an assistant or agent not to compete with his master or employer after the expiration of his term of service; by the buyer of property not to use it in competition with the business retained by the seller, or by a lessor of property not to be used in competition with the business of the lessee. It is, however, a very general rule that any contract of this character must be an incident to and in support of another contract, or sale, in which the covenantor has an interest which is in need of protection.

As was said by this Court in Clemons v. Meadows, 123 Ky., 181:

"Such contracts are intended to secure to the purchaser the good will of the trade or business, and as a guaranty the vendor agrees not to engage in like business or trade at that place for a specified time. In these cases the restraint to be valid must (not) be more extensive than is reasonably necessary for the protection of the vendee, in the enjoyment of the business which he has purchased. In this class of cases the court recognizes that the vendor has received an equivalent for his agreement to partially abstain from business at the place where his business was formerly conducted. In such cases the agreement does not contemplate that the business or trade purchased shall be discontinued and thus perhaps throw out of employment those who services were necessary to carry on the business, but on the contrary, it is contemplated that the business will be car-

ried on and that the public will continue to receive benefits which may accrue from the conduct of the business. It results that the agreement does not have the effect of depriving the public of any benefits which it has enjoyed from the conduct of the business, or pursuit of the trade which has been transferred to another. Such contracts do not have the effect of destroying the competition which existed by reason of which the public enjoyed benefits.''

In other words, a contract in restraint of trade will be enforced only when the restraint is no more extensive than is reasonably required to protect the interest of the party in whose favor it is given, and is not so large as to interfere with the interests of the public.

It is, however, a very general rule that all contracts of this character must be incident to and in support of another contract, or sale, in which the convenator has an interest which is in need of protection. In other words, no conventional restraint of trade will be enforced unless the covenant embodying it is merely ancillary to the main purpose of a lawful trade, and is necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party.

Appellants insist, however, that a contract, the sole object of which is to restrain competition, is void as an unlawful restraint of trade, and that we now have such a contract before us. In support of that argument it is pointed out that the contract in this case binds the laundry company to ''abandon the shirt, collar and cuff laundry business;'' that the contract, in effect, provides for a mere payment of money to appellants to abstain from business, and that that provision is not ancillary to a major contract which needs protection under the rule above laid down. If these facts were as contended for by appellants, the legal rule insisted upon by them would apply.

In Tuscaloosa Ice Mfg. Co. v. Williams, 127 Ala., 110, a contract by an owner of an ice machine to discontinue the manufacture of ice in a certain town for the term of five years, when made without any sale of his business, and in consideration of money payments by the owner of the only other ice plant in the place, in which there was a demand for ice sufficient to consume and render marketable the output of both factories, was held void as against public policy because it operated as a restraint

of trade and the creation of a monopoly in the supplying of ice within the town. There was no sale of the business in that case, neither was there any right to be protected, nor any consideration for the contract. Instead of being a contract ancillary to another contract of higher dignity, it was a bald agreement to pay a man to quit business, which is condemned by public policy.

And in Clark v. Needham, 125 Mich., 84, where a firm leased all of its machinery used in the manufacture of chaplets or anchors, with an agreement that it would not within five years manufacture or sell any chaplets or anchors, with some slight exceptions, and upon the execution of which lease the lessee leased back the machinery to the first lessor with permission to use it for any other purpose than the one prohibited, the contract was held to be an illegal restraint of trade. The effect of the lease was to pay the party to quit business without a sale of his business to the other contracting party.

And in Webb Press Co. v. Bierce, 116 La., 905, a contract by which one had contemplated engaging in a lawful business in a certain place agreed, for a pecuniary consideration, with one with whom he had no previous relations, and who also contemplated engaging in the same business at the same place, to abandon his plan, was held void for the same reason. Chaplin v. Brown Bros., 83 La., 156, is to the same effect.

If the contract is made for the protection of a private right created by the contract, and is reasonable in its provisions and scope, the court will uphold it; but if its direct purpose is to restrain trade, or if it results in a combination to create a monopoly, it will be condemned as illegal.

This distinction is clearly recognized in the cases; and, in our opinion, it is a sound distinction. Anderson v. Jett, 89 Ky., 375; Merchants Ice & Cold Storage Co. v. Rohrman, 138 Ky., 530.

But the facts of the case at bar do not bring this contract within the distinction above laid down. It is true that the contract, in words, requires the appellants to abandon a certain line of laundry business; but when the contract, as a whole, is read, it is reasonably plain that the appellants sold this business to the appellees for $1,600, a valuable consideration, and that the agreement to abandon that business in the city of Bowling Green and the territory adjacent thereto, was merely ancillary

to the principal contract of sale. And, that being true, the case falls within the general rule as above announced, and must be upheld. In so holding, we think the circuit judge was right.

2. The general outline of the facts which constituted the alleged breach of the contract is found in the opinion of this court when the case was here at the last term upon a rule to punish the appellants for contempt for violating the order of injunction granted by the circuit judge, which may be found in 144 Ky., 294. It is unnecessary to repeat that recital. We deem it sufficient to say that the proof fully sustains the finding of the chancellor, that the Bowling Green Steam Laundry Co. was organized for the purpose of evading the contract sued on herein, and that the contract has been otherwise violated.

The action of "Bert" Barrone in continuing to buy machinery for his laundry up to almost the very day of the foreclosure and sale thereof by his brother, Joe Barrone, and "Bert" Barrone's attempt to get released from the contract shortly after he had made it, when taken in consideration with his assertion that he would defeat it, if necessary, by taking the bankrupt law, all go to show that the finding of fact by the chancellor was correct.

Furthermore, there has been no change in the business, and "Bert" Barrone is, in reality, as much the manager and owner of the new business as he was the manager and owner of the old business before the sale was made to the appellees.

In conclusion, it is sufficient to say that the allegations of fact made by Moseley Bros., that the appellants were doing work of the kind prohibited by the contract, have been fully sustained by the proof; and in giving judgment for $225 damages, and granting the injunction to prevent a further infraction of the contract, the chancellor was entirely within the law and the proof in the record.

Wherefore the judgment is affirmed, with damages.