ESCAMBIA LAND & MANUFACTURING COMPANY, A CORPORATION, *Plaintiff in Error*, v. FERRY PASS INSPECTORS & SHIPPERS ASSOCIATION, A CORPORATION, *Defendant in Error*.

1. Two separate instruments under seal, executed by the parties at the same time, one an indenture of lease, the other in the nature of a defeasance which defeats the force or operation of the lease, must be read and construed together as one contract.

2. A contract whereby one party leases to another the shore or space between high and low water mark, a part of the bed of a navigable stream the title to which is in the State in trust for the public, and the riparian rights which are concurrent with the rights of other inhabitants of the State and must be exercised subject to the rights of others is void, as being illegal and contrary to public policy.

3.  Courts will take notice of their own motion of illegal con-
    tracts which come before them for adjudication, and will
    leave the parties where they have placed themselves.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the
court.

*Reeves & Watson,* for Plaintiff in Error;

*John C. Avery,* for Defendant in Error.

PARKHILL, J.—On the 22nd day of April, 1907, the
plaintiff in error and the defendant in error entered into
two agreements. The one was an indenture of lease under
seal, whereby the Escambia Land and Manufacturing
Company did let and rent to the Ferry Pass Inspectors &
Shippers Association for a period of five years from the
12th day of April, 1907, "the use of twenty (20) feet of
the following portions of the river front of certain lands
upon the Escambia River in said county of Escambia, and
in Township One (1), North, Range Thirty (30) West, to-
wit:" then follows a more particular description of the
premises, for the yearly rental of Five hundred and fifty
($550.00) dollars per year, payable semi-annually in ad-
vance, on the first day of May and the first day of Novem-
ber of each year. It was further provided,"The term 'River
Front' as used in this instrument means, and shall be con-
strued to include, a strip of land twenty (20) feet wide
and extending back from the high-water mark, as well as
all the land below high-water mark, and all the riparian
rights incident to the ownership of said land the water-
front of which is leased by this instrument."

By means of the other instrument, likewise under seal, the said parties further agreed: "This agreement, made this 22nd day of April, 1907, by and between the Escambia Land & Manufacturing Company, a corporation, and the Ferry Pass Inspectors' & Shippers' Association, a corporation, witnesseth: That, whereas, the parties have this day executed the contract of lease for twenty (20) feet of the water front of certain property situated on the Escambia River in said county of Escambia and in Township One (1) North, Range Thirty (30) West and Township One (1) South, Range Thirty (30) West, more particularly described in said indenture:

"Now, it is understood and agreed that the party of the second part is to institute suit against the White River Inspectors & Shippers Association, a corporation, to enjoin and restrain said last named corporation from the use of said property and the riparian rights incidental thereto, and that if said suit shall result adversely to the party of the second part, that is, if the court shall hold that the White River Inspectors & Shippers Association has the right to use said water front for the purposes against the use of which said injunction is sought, that then the afore-said indenture of lease between the parties of the first and second part shall be cancelled and annulled and the parties thereto shall be released from any and all liability arising therefrom."

A suit was instituted by the Ferry Pass Inspectors & Shippers Association against the White River Inspectors & Shippers Association and was brought here and will be found reported in 57 Fla. 399, 48 South. Rep. 643. After that decision the suit was dismissed by the plaintiff. Thereupon the plaintiff in the instant case, the Escambia Land & Manufacturing Company, terminated the lease by re-entry on January 23, 1909, and seeks to recover the rental

16—Vol. 59.

alleged to be due up to that time, the lessee having paid
no rental, claiming a release therefrom because the said
suit instituted against the White River Inspectors & Ship-
pers Association has resulted adversely to the Ferry Pass
plaintiff, that is that this court held that the White River
Inspectors & Shippers Association has the right to use
said water front for the purposes against the use of which
said injunction was sought.

The court below held with the contention of the defend-
ant herein, and we must construe the contract which is
contained in the two separate instruments. These two
instruments must be read and construed together. The
second instrument providing for the institution of the
suit against the White River Inspectors' & Shippers' As-
sociation is in the nature of a defeasance which defeats the
force or operation of the other deed. Lord Coke has given
a very correct definition of a "defeasance" in stating its
derivation. It is, says he, (Co. Litt., 236b), "fetched from
the French word 'defaire', i. e., to defeat or undo, 'infectum
reddere quod factum'." The true meaning of this language
is to make void the principal deed. See Flagg v. Mann,
(U. S.) 9 Fed. Cas. 202, 222, Words & Phrases, Vol. 2, p.
1930; Simmons v. West Virginia Ins. Co., 8 West Va. 474,
486 (citing Bouv. Law Dict.).

The effect of the defeasance in the instant case is to de-
feat the force or operation of the contract of lease, to undo
it, cancel and annul it, and to release the parties thereto
"from *any and all* liability arising therefrom," if the court
shall hold that the White River Association has the right
to use said water-front. If the effect of the defeasance is to
release the parties from liability for the rental *only after*
the decision of the court upon the rights of the White
River Association, then its language should have been "to
release the parties thereto from any and all liability aris-
ing *thereafter;*" but the language of the contract is that

upon a decision adversely to the Ferry Pass Association and in favor of the White River Association the parties shall be released from any and all liability arising *therefrom,* that is from the terms of the lease.

The release of liability provided for is in reference to the nature of the liability, that is the liability arising from the lease, and does not have reference to the time when the liability shall cease, but covers any and all liability arising from the lease in clear and unambiguous language.

The language of the defeasance is clear. It provides that if said suit shall result in a certain way "that then" (in that event) "the aforesaid indenture of lease between the parties of the first and second part shall be cancelled and annulled and the parties thereto shall be released from any and all liability arising therefrom." "Any and all liability arising therefrom" means any and all liability growing out of or having its origin, life and existence in the contract. "Any and all liability" does not mean some of the liability, as for instance, liability for rental after the decision of the court upon the question mentioned, but any and all liability growing out of or having its existence in the contract whether before or after the decision of the court upon the rights of the White River Association. The provision that if the court shall hold the White River Association has the right to use said water front that then the indenture of lease shall be annulled means that in the event mentioned and suit be brought on the lease the court shall annul the lease or hold it void and of no effect. This the lower court did, and the action of the court was correct as the demurrer to the plea setting up these matters admitted that the court held the White River Association had the right to use the said water front.

The defendant did not pay the rental. The plaintiff is suing to recover it. If the rental sued for did not arise from, grow out of or have its existence in the contract the

244        SUPREME COURT OF FLORIDA.

Escambia Land & Mfg Co. v. F. P. I. & S. A.—Opinion of Court.

plaintiff is not entitled to recover, for this suit is brought
to recover under the express contract. If the rents sued
for did arise from, grow out of or have their existence in
the contract, the defendant is released therefrom by the
very words of the contract by the court's holding that the
White River Association has the right to use said water
front. But that is not all. The plaintiff must fail in this
suit for another reason. Upon its face, the contract on
which this suit is brought is void, as being illegal and con-
trary to public policy. By the terms of the contract the
plaintiff undertook to lease to the defendant the river-
front and the riparian rights incident thereto to the exclu-
sion of the use thereof by the White River Association.
This the lessor had no right to do. In the Ferry Pass
Inspectors' and Shippers' Association v. The White River
Inspectors' and Shippers' Association, *supra,* this court
held that "the shore or space between high and low water
mark is the part of the bed of navigable waters, the title
to which is in the State in trust for the public. If the
owner of the land has title to high-water mark his land
borders on the water, since the shore to high-water mark
is a part of the bed of the waters, that if it is a navigable
water-way he has as incident to such title the riparian
rights accorded to the common law to such an owner. * *
A riparian owner may use the navigable waters and the
lands thereunder opposite his land for purposes of naviga-
tion and of conducting commerce or business thereon, but
such right is only concurrent with that of other inhab-
itants of the State and must be exercised subject to the
rights of others. * * In the absence of a valid grant
from the State no riparian owner or other person has an
exclusive right to do business upon public waters of the
State whether such waters are in front of the land of the
riparian owner or not. * * While the complainant and
the defendant in common with all other inhabitants of the

State have a right to use the waters of the navigable streams and the lands thereunder including the shore or space between high and low water mark for purposes of navigation and the transportation of logs thereover, neither the complainant nor the defendant has such right to the exclusion of its lawful exercise by the other or by any other inhabitant of the State."

The contract here is to lease the shore or space between high and low water mark, a part of the bed of a navigable stream the title to which is in the State in trust for the public, and to lease the exclusive use of riparian rights so far as the White River Association was concerned, when such riparian rights were concurrent with the rights of the White River Association and other inhabitants of the State and must be exercised subject to the rights of others. The contract, therefore, is an illegal contract. The plaintiff's right to a recovery is based upon the illegal contract, a breach of which is the very gist of the action. In Shortall v. Fitzsimmons & Connell Co., 93 Ill. App. 231, the court held, "a contract to build a wall through the waters of Lake Michigan by driving piles into, and making a permanent structure upon lands under said waters, the title to which is in the State of Illinois in trust for the public, is an illegal contract, and the wall, when built, is a purpresture, and liable to abatement at the instance of the State." The court said, "we know of no well considered case where a recovery has been allowed where the very basis of the action is an illegal contract or its breach."

In Stewart & Bro. v. Sterns & Culver L. Co., 56 Fla. 570, 48 South. Rep. 19, this court said: "The courts will not in general aid either party to enforce an illegal agreement, but will leave the parties where they place themselves with reference to such illegal agreement, except where the law or public policy requires action by the courts, or where the parties are not *in pari delicto,* and perhaps in other

cases not pertinent here." In that case the court said further that "when it appears from a contract and the circumstances under which it was made, and from its purposes, operation and results, that in its terms or in its full operation it is unlawful, or its operation accomplishes or in reality tends to accomplish an unlawful purpose, whether so intended by the parties thereto or not, the contract will not be enforced by the courts."

Courts will take notice of their own motion, too, of illegal contracts which come before them for adjudication, and will leave the parties where they have placed themselves. Richardson v. Buhl, 77 Mich. 632, 43 N. W. Rep. 1102, 6 L. R. A. 457.

The judgment is affirmed.

TAYLOR and HOCKER concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur only in the conclusion that the contract is illegal and unenforcible.

Petition for rehearing in this case denied.