135 So.2d 252 (1961)
Peter SCHAAL, d/b/a Orlando Advertising Co., Appellant,
v.
Charlie RACE, Appellee.
No. 2482.
District Court of Appeal of Florida. Second District.
December 8, 1961.
*253 Robert G. Murrell, Robert Petree, Sam E. Murrell & Sons, Orlando, for appellant.
Harvey Crittenden, Crittenden & Crittenden, Winter Haven, for appellee.
ALLEN, Acting Chief Judge.
Appellant seeks review of a final order entered by the court below dismissing his amended complaint with prejudice. Appellee was defendant below.
Plaintiff filed his original complaint for damages arising out of defendant's refusal to pay for advertising services under an oral contract rendered defendant in connection with his political campaign for Commissioner of Agriculture. Defendant moved to dismiss on the ground that the agreement sought to be enforced is illegal and unenforceable under Chapter 99, F.S.A., and does not state a cause of action for which relief can be granted. Plaintiff moved for summary judgment supported by his own affidavit setting forth essentially the facts alleged in the original complaint. Defendant's motion to dismiss the original complaint was granted with leave to amend, the lower court reserving its ruling on plaintiff's motion for summary judgment. The amended complaint set forth basically the same allegations as the original except that specific references to a political campaign were deleted. Defendant moved to dismiss the amended complaint.
In its final order the lower court dismissed the amended complaint with prejudice stating as its reasons therefor that the alleged agreement set forth in the original complaint was clearly in violation of Chapter 99, F.S.A., and that the amended complaint was essentially the same as the original except that it eliminated reference to services to be furnished plaintiff by defendant as a candidate for Commissioner of Agriculture. The court, referring to the original complaint, the court's order dismissing same and plaintiff's affidavit in support of motion for summary judgment, found that the amended complaint is fictitious, a sham, and molded for the sole purpose of staying in court. The court's order further stated:
"The purpose of pleading is to determine in the suit the real question on controversy. To accomplish this purpose the law favors liberality in amendments to pleadings. This liberality does not mean that a pleader at his convenience may insert or remove an essential element in a suit on a contract, which element materially affects the enforceability of the contract."
The plaintiff below has assigned as error the granting of the motion to dismiss the original complaint and also the dismissal of the amended complaint.
We shall consider first the decision of the lower court in dismissing the amended complaint as a sham since it was apparent from the record that the amended complaint deleted from the original complaint all references to an election, which showed in the original complaint an illegal contract. Not only did the court have before it the original complaint which showed the true facts in connection with the subject matter of the complaint, but the plaintiff had also filed an affidavit in aid of his motion for summary judgment which *254 set forth the same facts that were included in the original complaint, although the court did not rule on the motion for summary judgment.
In 21 R.C.L., Pleadings, § 17, p. 452, it is stated:
"* * * And so in a case where a denial is contrary to an admission, the admission must prevail, and the denial should be stricken out as sham or irrelevant."
See Hayward v. Grant, 13 Minn. 165, 97 Am.Dec. 228.
The Florida Supreme Court in Rhea v. Hackney, 117 Fla. 62, 157 So. 190, 193, said:
"A plea is considered `sham' when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue. Pleading a matter known by the party to be `false' for the purpose of delay or other unworthy object, has always been considered a very culpable abuse against justice, and at common law was subject to censure and summary setting aside with costs. 1 Chitty on Pleading (7th Ed.) p. 541; 2 Bouvier's Law Dictionary, p. 680.
"In most jurisdictions a sham pleading may, in a proper case, be struck out on motion. The power is not derived from statute but is inherent in the court. Its exercise is not objectionable as infringing the right of trial by jury, for the right of a defendant to a jury trial depends upon there being a real issue to be tried. The court has power to determine as a matter of judicial cognizance whether there is such an issue, and whether an ostensible issue is in reality fictitious and sham, though the court does not have power to try the issue if there is one in truth as well as in form.
* * * * * *
"A `sham' plea is one good on its face but absolutely false in fact. A `frivolous' plea is one which on its face plainly sets up no defense, although it may be true in fact. One is as objectionable as the other in frustrating the orderly administration of justice. * * * Hence it is a judicial prerogative inherent in a court to strike out pleadings that are either sham or frivolous. * * *"
In the case of Meadows v. Edwards, Fla. 1955, 82 So.2d 733, 735, the Supreme Court, in an opinion by Justice Barns, stated:
"In order to justify the striking of a pleading for being sham or false it must be so undoubtedly false as not to be subject to a genuine issue of fact. The motion should be tested by the same standards as a motion for a summary judgment in the following respects. Such procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact and the term `genuine issue' is not meant to be necessarily confined to a pleading or paper issue. To use the language of Judge Cardozo, later Justice, made in reference to the law applicable to motions for summary judgment, 6 Moore's Federal Practice 2d 2028, to the effect that the very object of a motion for judgment because of sham pleadings `is to separate what is formal or pretended in denial or averment from what is genuine or substantial, so that only the latter may subject a suitor to the burden of trial.' * * *"
We hold that the lower court was justified in dismissing the amended complaint as a sham in view of the record in the case then before him.
When questioned by the court, the attorney for the appellant-plaintiff answered frankly that it would serve no purpose to overrule the lower court on dismissing the amended complaint as the data eliminated *255 from the original complaint would necessarily be brought out in a trial of the case and that the real question with which they were concerned was whether or not the court erred in dismissing the original complaint because the indebtedness incurred violated the corrupt practice provisions of Florida's election code.
The circuit Court of Hillsborough County upheld the constitutionality of Chapter 99, F.S.A., in the case of Smith v. Ervin. The Supreme Court in Smith v. Ervin, Fla. 1953, 64 So.2d 166, 168, quoted copiously from the opinion and decision of the late Circuit Judge Henry C. Tillman, who was the lower court judge, as follows:
"The learned Chancellor who heard and decided this case wrote an able opinion. Pertinent portions of the opinion are:
"`This case involves the constitutionality of a part of what has come to be known as The Election Code, which was enacted as Chapter 26870, the laws of Florida 1951, the codification of which is Section 99.161, which is a section dealing with contributions to candidates, expenditure of campaign funds, and the filing of reports in relation thereto. Subsections (4)(a) and (7) of Section 99.161 are as follows:
"`"(4) Campaign Treasurer in Charge of Funds: Time Limit. 
"`"(a) No contribution or expenditure of money or other thing of value, nor obligation therefor, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the State of Florida except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate.
* * * * * *
"`"(7) Written Authorization of Expenditure Required. 
"`"No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf, or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper."
"`This statute provides a penalty amounting to a misdemeanor for violation of Section 99.161 by an individual, and which reads as follows, in Section 104.27:
"`"104.27 Penalties for violation of § 99.161. 
"`"(1) Any person who knowingly violates the provisions of § 99.161 shall be deemed guilty of a misdemeanor and subject to a fine of not more than one *256 thousand dollars or to imprisonment for not more than six months."
* * * * * *
"`Otherwise, how could the elector ever tell who was behind this candidate or that; and the Legislature chose the only way by which the contributions to campaigns could be policed and become the knowledge of any man who would take the trouble to go to the state agency where the reports are assembled. There would be little use in the balance of the act prohibiting the contributions from race track owners, dog track owners, public utilities, and other interests considered undesirable proponents of a candidate in Florida unless the Legislature devised a way by which it could be ascertained by the people as to who were supporting and putting up the money for the candidate.'"
The Supreme Court in Citizens' Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714, 717, said:
"In Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 19, 69 A.L.R. 689, in an opinion written by Mr. Commissioner Davis, this court said, quoting with approval from Berka v. Woodward, 125 Cal. 119, 57 P. 777, 45 L.R.A. 420, 73 Am.St.Rep. 31:
"`This, then, is the undoubted rule, that, when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted rights growing out of it. And the reason is apparent; for to permit this would be for the law to aid in its own undoing. Says the Supreme Court of the United States in President, etc., v. Owens, 2 Pet. 527 [7 L.Ed. 508]: "No court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of the country. How can they become auxiliary to the consummation of violations of law? There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal." And again the same august tribunal, in Coppell v. Hall, 7 Wall. 542 [19 L.Ed. 244], says:
"`"Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract and void for the same reasons.
"`"Where the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded on its own violation."'
"In Escambia Land & Mfg. Co. v. Ferry Pass Inspectors, etc., Association, 59 Fla. 239, 52 So. 715, 717, 138 Am.St.Rep. 121, it was said: `Courts will take notice of their own motion, too, of illegal contracts which come before them for adjudication, and will leave the parties where they placed themselves.' To like effect is Stewart v. Stearns & Culver Lbr. Co., 56 Fla. 570, 48 So. 19, 24 L.R.A.(N.S.) 649."
In Local No. 234, etc. v. Henley & Beckwith, Inc., Fla. 1953, 66 So.2d 818, 821, the Supreme Court of Florida said:
"We reach this conclusion for the very evident reason that an agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689. And when a contract or agreement, express or implied, is tainted with the vice of such illegality, no alleged right founded upon the contract or agreement can be enforced in a court of justice. 12 Am.Jur., Contracts, secs. *257 160, 209. Where the parties to such an agreement are in pari delicto the law will leave them where it finds them; relief will be refused in the courts because of the public interest. Stewart v. Stearns and Culver Lumber Co., 56 Fla. 570, 48 So. 19, 24 L.R.A., N.S., 649; Escambia Land & Mfg. Co. v. Ferry Pass Inspectors & Shippers Ass'n, 59 Fla. 239, 52 So. 715, 138 Am. St.Rep. 121. For courts have no right to ignore or set aside a public policy established by the legislature or the people. Indeed, there rests upon the courts the affirmative duty of refusing to sustain that which by the valid statutes of the jurisdiction, or by the constitution, has been declared repugnant to public policy." See also L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121; State ex rel. Johnson v. Patterson, 67 Fla. 499, 65 So. 659; and Escambia Land & Mfg. Co. v. Ferry Pass I. & S. Ass'n, 59 Fla. 239, 52 So. 715.
Pomeroy's Specific Performance of Contracts, 3d Edition, p. 642, § 280, Illegal Contracts Void, states:
"An illegal contract is, as a rule, void  not merely voidable  and can be the basis of no judicial proceeding. No action can be maintained upon it, either at law or in equity. This impossibility of enforcement exists, whether the agreement is illegal in its inception, or whether, being valid when made, the illegality has been created by a subsequent statute. The illegality here spoken of, although analogous to some kinds of constructive fraud, is, of course, to be carefully distinguished from fraud. Agreements are often loosely spoken of as illegal, when they are merely fraudulent, or even when the parties simply lacked the capacity to enter into a binding engagement. Illegality is an element which wholly vitiates the contract between the immediate parties, as well as in respect to the third persons, and still it is an element with which society and the state, as represented by the courts, are more immediately concerned than even the parties themselves. If a contract is tainted with the vice of illegality, it is held to create no obligation, not from any concern for the individual rights of the parties who may be equally in fault, but from a regard for the public. * * *."
Then at page 651, § 286, Defense of Illegality Rests Upon Reasons of Public Policy, it is stated:
"As has already been stated, courts set aside or refuse to enforce illegal contracts, in general, not from any regard for the objecting party, nor from a desire to protect his individual interests, but from reasons of public policy. Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements. The objection which prevails and avoids the illegal contract comes not from the individual litigant, but from the public at large who speak through the courts. Whenever, therefore, in a suit for specific performance, the illegality, not having been alleged in the pleadings, is disclosed for the first time by the evidence, the court will on its own motion pursue the investigation, and, if the fact is established refuse to enforce the agreement. * * *"
It may seem an undue hardship upon the plaintiff to refuse him compensation for services rendered or to be rendered on behalf of the defendant in this case, but when we consider the purposes of the law violated by both the appellant and the appellee *258 it would serve no purpose to pass such regulatory acts if parties could with impunity violate them.
We, therefore, have no hesitancy in affirming the lower court.
Affirmed.
KANNER and SMITH, JJ., concur.