212 So.2d 893 (1968)
Harry EDWARDS, Appellant,
v.
Tom D. TRULIS, Appellee.
No. J-217.
District Court of Appeal of Florida. First District.
February 22, 1968.
Rehearing Denied August 30, 1968.
*894 M. Howard Williams, Tallahassee, for appellant.
Benjamin W. Redding, of Barron & Hilton, Panama City, for appellee.
WIGGINTON, Chief Judge.
Appellant sued appellee for a brokerage commission allegedly due him under an oral contract between the parties involving an unconsummated sale of registered stock in a Florida corporation. Appellee defended on the ground, among others, that appellant was not a registered dealer or salesman in securities under the provisions of the uniform sale of securities law, Chapter 517, Florida Statutes, F.S.A., and therefore could not legally act as broker in the transaction or contract for the payment to him of a commission for the attempted sale of the securities involved.
At the hearing before the court on appellee's motion for summary judgment, it was stipulated that at no time material to the cause was appellant a dealer or salesman registered with the Securities Commission *895 pursuant to the provisions of F.S. Chapter 517, F.S.A. Restricting its consideration of the motion for summary judgment to the above-mentioned defense only, the trial court found that there existed in the pleadings, depositions and affidavits on file in the cause no genuine issue of any material fact, and that appellee was entitled to judgment as a matter of law. From the summary judgment rendered in appellee's favor this appeal is taken.
The primary question presented for our decision is whether a contract between the owner of registered corporate stocks in Florida, and a person who has failed to register as a dealer or salesman pursuant to the requirements of F.S. Chapter 517, F.S.A., whereby the seller agrees to pay the salesman a commission for his services in selling corporate stocks owned by the seller, is contrary to the public policy of this state and therefore void ab initio.
The uniform sale of securities law in effect in this state provides that no dealer or salesman as defined in the act shall engage in the business of selling any securities except in connection with transactions exempt under Section 517.06 of the act, unless he has been registered as a dealer or salesman in the office of the Securities Commission pursuant to the provisions of the statute.[1] The act further provides that the Commission, in the name of the state, may institute suit to enjoin any person who acts or attempts to act as a dealer or salesman of securities within this state without first being duly registered as provided therein.[2] Any one violating the provisions of the act shall be guilty of a felony and upon conviction punished by fine or imprisonment in the state penitentiary.[3]
There can be little doubt but that the foregoing statute was enacted pursuant to the police power granted by the Constitution of Florida, and establishes the policy that the public be protected against fraudulent and deceptive practices in the sale and marketing of securities. Under these circumstances it must be held as a matter of law that any contract made in violation of its terms, provisions or requirements is void and confers no enforceable rights on the contracting parties.
The case of McManus v. Fulton[4] decided by the Supreme Court of Montana involves facts essentially similar in all material respects to those in the case sub judice. There a salesman or dealer in securities sought to recover from the owner of corporate stock a commission which the owner agreed to pay for the salesman's services in procuring a purchaser for the stock which the owner was desirous of selling. The owner defended on the ground that the dealer was not registered in accordance with the requirements of the securities act of Illinois in which state the contract was made, and where the services were allegedly performed. In holding the contract to be contrary to public policy and void, that court said:
"Where a statute designed for the protection of the public prescribes a penalty, that penalty is the equivalent of an express prohibition, and a contract in violation of its terms is void, * * *
* * * * * *
"`Whenever a statute is made for the protection of the public, a contract in violation of its provisions is void,' said Judge Kerrigan in Brandenburg v. Miley Petroleum Exploration Co. (D.C.) 16 F.2d 933, holding that a contract employing salesmen to sell corporate stock is void, when salesmen are not licensed to sell under the California Securities Act (St. 1917, p. 673, as amended). * * *
* * * * * *
"`The great weight of authority is that where a party comes into court seeking *896 to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit, or for the preservation of the alleged rights, of either party, but in the maintenance of its own dignity, the public good and the laws of the state'  and cases cited. Estate of Smythe v. Evans, 209 Ill. 376, 70 N.E. 906."
In Brandenburg v. Miley Petroleum Exploration Co.[5] a complaint filed by a securities dealer claimed judgment for commissions earned under a contract for services rendered in the sale of securities in California. The demurrer to the complaint alleged that at the time the contract was executed and the services allegedly performed, plaintiff was not registered as a dealer or salesman under the securities act of California, thereby rendering the contract void. In sustaining the demurrer on the grounds asserted, the court said:
"* * * Contracts made by unlicensed persons, performance of which requires them to do the acts for which they should have been licensed, are void. 42 A.L.R. 1226, note; * * *."
In Zerr v. Lawlor[6] a registered securities salesman sued for commissions allegedly owed him for services performed under a contract with defendant in procuring a sale of the capital stock owned by defendant. The contract upon which suit was brought provided that the owner would pay the salesman a commission of 25% of the sales price of the stock, although the securities act in effect in that state restricted the payment of a sales commission to not more than 20% of the sales price. Since the terms of the contract violated the provisions of the statute with respect to the maximum amount of commission which could be paid, the court, in denying recovery, said:
"Not only has the petition failed to allege a compliance with the requirements of the Blue Sky Law, but it has in terms set up a contract that is in violation of the statute, and void upon its face. The law says not more than 20 per cent. of the sales price shall be paid for commissions and the petition alleges a contract for commissions of 25 per cent. and bases a recovery thereon. On its face the petition fails to state a cause of action, and a judgment based thereon is illegal and void."
The above-cited decisions dealing specifically with claims for brokerage commissions by unregistered dealers and salesmen are based upon principles of law recognized and adhered to by the courts of this state. In Local No. 234, etc. v. Henley & Beckwith, Inc.[7] plaintiffs sought a declaration of rights under their contract with defendant labor union made in violation of the open shop amendment to the Florida Constitution. In holding the agreement to be repugnant to the public policy of the state and therefore void, our Supreme Court said:
"We reach this conclusion for the very evident reason that an agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689. And when a contract or agreement, express or implied, is tainted with the vice of such illegality, no alleged right founded upon the contract or agreement can be enforced in a court of justice. *897 12 Am.Jur., Contracts, secs. 160, 209. Where the parties to such an agreement are in pari delicto the law will leave them where it finds them; relief will be refused in the courts because of the public interest. Stewart v. Stearns and Culver Lumber Co., 56 Fla. 570, 48 So. 19, 24 L.R.A.,N.S., 649; Escambia Land & Mfg. Co. v. Ferry Pass Inspectors & Shippers Ass'n, 59 Fla. 239, 52 So. 715, 138 Am.St.Rep. 121. For courts have no right to ignore or set aside a public policy established by the legislature or the people. Indeed, there rests upon the courts the affirmative duty of refusing to sustain that which by the valid statutes of the jurisdiction, or by the constitution, has been declared repugnant to public policy.
* * * * * *
"Agreements in violation of public policy are void because they have no legal sanction and establish no legitimate bond between the parties. Brumby v. City of Clearwater, supra [108 Fla. 633, 149 So. 203]. Because of this the defendant may assert the invalidity of the contract even though he is a participator in the wrong. This is so for the reason that one who has entered into a contract or undertaking which is violative of public policy owes to the public the continuing duty of withdrawing from such an agreement."
In Schaal v. Race[8] plaintiff sought judgment for advertising services rendered defendant as a political candidate under an oral contract which violated the provisions and requirements of the Florida Election Code. In holding that the contract was void and unenforceable as contrary to the public policy of the state, the Second District Court of Appeal said:
"It may seem an undue hardship upon the plaintiff to refuse him compensation for services rendered or to be rendered on behalf of the defendant in this case, but when we consider the purposes of the law violated by both the appellant and the appellee it would serve no purpose to pass such regulatory acts if parties could with impunity violate them."
Based upon the foregoing authorities, and for the reasons expressed therein, we hold that the above-stated question presented to us for decision must be answered in the affirmative, and the contract sued upon is void and unenforceable as contrary to the public policy expressed in the uniform sale of securities law in effect in this state.
Appellant assumes the secondary position that the commission he claims under the contract sued upon was for services rendered in connection with a transaction which is specifically exempt from the provisions of the statute requiring registration of dealers and salesmen.
As recited above, the provision of the act requiring registration of dealers and salesmen as a prerequisite for engaging in the business of selling securities exempts from its requirement those transactions described in F.S. Section 517.06, F.S.A.[9] The latter section of the statute provides that the chapter shall not apply to the sale of any security in any of the following transactions, to wit:
"(3) The isolated sale of securities when made by or on behalf of a vendor not the issuer or underwriter thereof, who, being the bona fide owner of such securities disposes of his own property for his own account and such sale is not made directly or indirectly for the benefit of the issuer or an underwriter of such securities or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or or evading any provision of this chapter.
* * * * * *
"(5) The sale, transfer or delivery of securities to a bank, savings institution, trust company, or other trust, insurance *898 company, corporation, pension plan, or to a broker or dealer."
Appellant asserts that the pleadings, affidavits and depositions on file in the cause create a genuine issue as to material facts concerning whether the transaction in which he was engaged was exempt under the terms of the above-quoted provisions of the statute and, therefore, the fact that he was not registered as a dealer or salesman is immaterial to his right to recover. If the record supported appellant's assertion in this respect, we would be inclined to hold that the summary judgment appealed herein is improper and should be reversed. We do not, however, find this to be the case.
A careful reading of the pleadings filed in the cause fails to disclose any issue with respect to whether the contract sued upon authorizing appellant to sell appellee's securities constituted an exempt transaction within the provisions of subparagraph (3) quoted above. It may be said that by inference the pleadings do create a paper issue as to whether the sale of defendant's stock was to be made to a corporation in a transaction which, under subparagraph (5) above quoted, would be exempt from the registration requirements of the act. This paper issue of fact, standing alone, would be sufficient to preclude the granting of the summary judgment and would require that there be reserved for the trial the question of whether the transaction was exempt under the provisions of the statute. If, however, the depositions and affidavits before the court established by undisputed proof that the transaction was not exempt under the applicable provisions of the statute, then the paper issue would fall and thereafter be of no effect as a bar to the summary judgment.
The record brought to this court by appellant contains only the pleadings and his affidavit in opposition to appellee's motion for summary judgment. There is not included in the record on appeal the depositions on file in the cause, or the affidavit submitted by appellee in support of his motion for summary judgment. We therefore have no means of knowing exactly what evidence was before the trial court which he considered as being sufficient to demonstrate an absence of any genuine issues of fact and which impelled him to the conclusion that appellee was entitled to judgment as a matter of law.
The affidavit submitted by appellant in opposition to the motion, and which is contained in the record before us, merely avers that appellant, as affiant, has read the complaint filed in the cause and that the allegations contained therein are true, and that at all times the defendant was a director in the corporation whose corporate stock appellant was employed to sell. Such an affidavit can hardly be said to comply with the requirements of Rule 1.510, R.C.P., 31 F.S.A., relating to the form of affidavits to be submitted in opposition to a motion for summary judgment.[10] A similar affidavit in a summary judgment proceeding was held to be insufficient and of no legal effect by the Second District Court of Appeal in Deerfield Beach Bank v. Mager.[11]
It is a fundamental principle of appellate procedure that the orders and judgments of a trial court reach the appellate court clothed with a presumption of correctness. Since appellant has failed to include in the record on appeal the affidavits and depositions which were before the trial court when it considered appellee's motion for summary judgment, it is impossible for *899 us to say whether such evidence, and the reasonable inferences deducible therefrom, creates a genuine issue of any material fact respecting the exempt status of the transaction involving the sale of appellee's securities as contended by appellant. Under the presumption of correctness doctrine we must hold that appellant has failed to demonstrate reversible error by the trial court.
For the foregoing reasons the judgment appealed is affirmed.
SPECTOR, J., concurs.
JOHNSON, J., concurs specially.
JOHNSON, Judge (specially concurring).
I concur in the conclusion reached by the majority opinion in this case, but only because the record presented to us is so deficient that we have no way of determining whether the sale of the securities involved here came within the statutory exemption provided for in Section 517.06, Florida Statutes, F.S.A. We do not know what evidence was before the trial court to form the basis for his judgment and in the absence of a showing from the record to the contrary, such judgment comes to us clothed with a presumption of correctness.
NOTES
[1] F.S. § 517.12(1), F.S.A.
[2] F.S. § 517.19(4) (6), F.S.A.
[3] F.S. § 517.302, F.S.A.
[4] McManus v. Fulton (1929), 85 Mont. 170, 278 P. 126, 130, 131, 67 A.L.R. 690.
[5] Brandenburg v. Miley Petroleum Exploration Co., (D.C.N.D.Cal. 1926) 16 F.2d 933.
[6] Zerr v. Lawlor, (Tex.Civ.App. 1927) 300 S.W. 112, 114.
[7] Local No. 234, etc. v. Henley & Beckwith, Inc., (Fla. 1953) 66 So.2d 818, 821, 823.
[8] Schaal v. Race, (Fla.App. 1961) 135 So.2d 252, 257, 258.
[9] F.S. § 517.12(1), F.S.A.
[10] Rule 1.510(e), R.C.P.

"Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or by further affidavits."
[11] Deerfield Beach Bank v. Mager (Fla. App. 1962), 140 So.2d 120.