**WALLACE v. FOLKS, et al (No. 2).**
No. 68-4622.
Circuit Court, Duval County.
July 2, 1968.

William H. Maness, Jacksonville, for plaintiff.

Edward L. Bush, Gainesville, for defendants Warren H. Folks, Mrs. R. C. Holloway and Mrs. Richard M. Harris.

Harold B. Wahl and Nathan H. Wilson, both of Jacksonville, and Donald E. Strickland, Ocala, for Southern Bell Tel. & Tel. Co., amicus curiae.

MARION W. GOODING, Circuit Judge.

*Judgment of contempt and enlargement of scope of injunction:* This cause is again before this court on an order to show cause issued to defendant, Warren H. Folks, pursuant to motion therefor supported by the affidavit of David E. Connell and of Harold Church; and, upon plaintiff's motion for leave to file amendment to complaint, adding Mrs. Richard M. Harris as a party defendant, and a motion to broaden the scope of the existing temporary injunction.

Likewise before the court is the motion filed by counsel for defendant, Warren H. Folks, seeking to suppress, stay, and/or quash the notice of hearing given by counsel for plaintiff to counsel for said defendant by telephone between 4 and 4:30 P.M. on June 27, 1968, as well as written notice furnished by mail, along with other pleadings, addressed to Edward L. Bush, Esq., 200 N.E. 1st Street, Gainesville, Florida.

At said hearing the court heard the testimony of the various witnesses and upon consideration thereof makes the following findings of law and fact —

1. The temporary injunction issued by this court on June 13, 1968, specifically directed the defendant Warren H. Folks to refrain from conducting or carrying on a campaign for contributions, funds, or the holding of a fund-raising dinner or meeting at any time or place and to refrain from engaging in any other political activity designed to promote, or promoting or attempting to promote, the candidacy of George C. Wallace for the office of president of the United States, other than as a private citizen. There is no doubt in the mind of the court that the defendant Folks has violated said injunction by participating

in the sale of tickets for a "4th of July picnic" and the solicitation which he directed to other persons calling upon them to buy or help sell tickets "so we can keep the headquarters open".

This court is likewise of the opinion that the maintaining of a headquarters wherein campaign materials of George C. Wallace are sold, and the selling thereof, as well as the promoting of a meeting, where food is served or otherwise, and from which all proceeds are earmarked for the "express purpose of promoting, as private citizens, or otherwise, the candidacy of George C. Wallace in Jacksonville and Duval County" is beyond the scope and meaning of the exception set forth in said injunction by the language employed by this court, "other than as a private citizen". Such activity is nothing short of the same activity which said defendant has engaged in, all along, and the use of the words "as private citizens" is nothing but an awkward effort to carry on the activity enjoined under a different name.

The spirit and purpose of the injunction of this court was to save to the defendant Folks that freedom of speech guaranteed by the first amendment to the constitution of the United States and section 13 of the declaration of rights of the constitution of Florida, but such freedom of speech does not embrace the unqualified privilege of using the name of George C. Wallace and the campaign efforts of George C. Wallace, directly or indirectly, as a springboard for fund-raising activities of any kind, for the sale of materials bearing the name of Wallace, the receiving or disbursing of funds purporting to be in the furtherance of the campaign efforts of George C. Wallace or the organizing of workers, or working in concert with other workers, to accomplish these goals; what the defendant may properly do, and all he may properly do, over the objections of George C. Wallace, as herein clearly expressed, is to express his personal, private views of George C. Wallace, and no more. Indeed, by his election to so restrict the activities of the defendant Folks, the plaintiff, George C. Wallace, need do no more than voice his objections to a court of equity, without the necessity of showing the existence of any special damages.

In State ex rel. LaFollette v. Hinkle (1924), 131 Wash. 86, 229 P. 317, cited by the Supreme Court of Florida in Battaglia v. Adams, 164 So.2d 195, the courts of the state of Washington held that the secretary of state could be prohibited from certifying certain candidates for state offices under nominations made by a self-styled "LaFollette State Party," where the use of LaFollette's name in connection with the ticket was contrary

to LaFollette's wishes and was alleged to be prejudicial to the national campaign efforts of LaFollette for the presidency of the United States. In so holding, that court stated —

> "Nothing so exclusively belongs to a man or is so personal and valuable to him as his name. His reputation and the character he has built up are inseparably connected with it. Others can have no right to use it without his express consent, and he has a right to go into any court at any time to enjoin or prohibit any unauthorized use of it. Nor is it necessary that it be alleged or proved that such unauthorized use will damage him. This the law will presume. But it was said in the argument that consent to the use of his name in connection with the state party had been obtained before the party held its convention. If at one time Mr. LaFollette gave consent to the use of his name in this connection, it was nothing more than a bare license or permission which may be revoked by him at any time; and in this case, if the permission were given, he has chosen to exercise his lawful right to revoke it. No authorities are cited by either of the parties concerning the unauthorized use of a man's name, and within the short time at our disposal our briefing has failed to disclose any such case. But we have no hesitancy, even without the backing of authority, in holding that those organizing and creating the LaFollette State Party had no right to use Mr. LaFollette's name in that connection against his wishes."

Under the circumstances revealed by the pleadings, affidavits and evidence now before this court, even the allowance of the right of said defendant to express his views of George C. Wallace, publicly or privately, is to allow defendant, Warren H. Folks, the benefit of the doubt under the law. The right or privilege of free speech and publication, guaranteed by the constitutions of the United States and the state of Florida has its limitations and is not an absolute right, although limitations are recognized only in exceptional cases. Freedom of speech does not comprehend the right to speak on any subject at any time. And it has been said that the right of "getting at what one wants to know, either to inform the public or to satisfy one's individual curiosity," is a far cry from the type of freedom of expression, comment, and criticism so fully protected by the first and fourteenth amendments of the constitution. The hours and place of public discussion can be constitutionally controlled. See 16 Am.Jur.2d 665, *Constitutional Law*, §345.

This court is well aware, also, of the difficulty in separating legitimate from illegitimate speech, and is well aware of the principle that to enforce freedom of speech in disregard of the rights of others is harsh and arbitrary in itself. See 16 Am.Jur. 2d 667 where the text writer says —

"The line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed or punished, is finely drawn. Separation of legitimate from illegitimate speech calls for sensitive tools. Whenever the constitutional freedom of speech and association are asserted against the exercise of valid governmental powers a reconciliation must be effected, requiring an appropriate weighing of the respective interests involved."

The New York court had such a difficult problem before it in Ez Achaim Society, Inc. v. Murray J. Cohen, 181 N.Y.S.2d 717, which was an action by a membership corporation to compel a member's son-in-law to remove an inscription on a tombstone erected over a wife's grave, on which there was a carved inscription which read in part, "Beneath this stone lies a woman who loved life but was murdered by a Doctor whose name is not worthy to appear here." That court held that whether that language might be reasonable in light of all the circumstances was a question of fact which would have to be resolved by a trial.

In the case at bar, no such doubt exists. The plaintiff, by the institution of this action, and by his several affidavits filed herein, leaves no doubt that his desire is to remove the defendant Folks and those working or acting in concert with him from any and and all participation in his campaign efforts to be elected president of the United States. The dearth of cases on his right to do so, as well as common sense and an awareness of the political facts of life, convinces this court that this is a rare and exceptional action. Nevertheless, there are guidelines which this court is required to follow, one of which is set forth in 8 Fla. Jur. 430, *Courts*, §154, *"Decision in the absence of precedent,"* where the text writer correctly states this rule, to-wit —

"In establishing a new rule or precedent the court should take into account considerations of public policy, including changes in our social and economic customs and present day concepts of right and justice."

Under such authority, in a day of space travel and worldwide television coverage, the political fortunes of candidates may well turn on the fact of who is supporting them, as well as the fact of

who oppose them. Certainly no interpretation of the constitution will permit a candidate for public office to pick his enemies, but every concept of right and justice dictates the wisdom of preserving to a candidate the right to pick his "friends".

Under Florida law, the question of the right of a candidate to pick his "friends", and the question now before this court, can never arise except in the present situation, involving the election of a president and vice president of the United States, for Florida's Election Code (which applies only to campaigns "for political office in the state") forbids a contribution or expenditure of money or any other thing of value, the making or receiving of contributions, directly or indirectly in the furtherance of the candidacy of any candidate *without the prior written order of the candidate or his campaign treasurer*. Thus, the spending of any money, the raising of money, or the incurring of any obligation for anything of value by a private committee or self-appointed group is effectively foreclosed. (See Opinion of Attorney General No. 058-252, August 27, 1958 * * * *Expenditure by Private Committee*).

Our Supreme Court has upheld that Election Code against the contention that such restrictions violate the constitutional guarantee of freedom of speech and press. See Smith v. Ervin, 64 So.2d 166. That code so firmly fixes the public policy of the state of Florida that a fully performed oral contract to pay for advertising services in connection with a political campaign was held unlawful and unenforceable where a public policy statute of the state of Florida was violated. See Schall v. Race, 135 So.2d 252.

But, while the language of the Election Code does not apply to presidential elections, this court is of the opinion that the public policy with respect to the giving and receiving of political contributions, and the expenditure or the incurring of obligations for the expenditure of materials in the furtherance of a political campaign, by self-appointed, private and unauthorized groups. should be applied by the court, in a proper case, to campaigns for the office of president of the United States. To so hold is no more than the recognition of the inherent right of a candidate to dictate the course and character of his own political efforts without the "help" from those whose "help" is objectionable. for whatever reason.

The late Mr. Justice Terrell expressed the same viewpoint in these words, to-wit — "Commerce in political opinion is essential to democratic government and even though one can be a can-

didate for office he cannot be required to poke his head down a hollow log to express any political opinion he may generate." Rosenfelder v. Huttoe,, 24 So.2d 108.

2. It has also been called to the court's attention that the defendant has made application for telephone service in the name of "Folks' Campaign Supply Center", or some variation of those words but the use of such words in connection with any establishment devoted exclusively to the sale or distribution of campaign materials of George C. Wallace is equally within the scope of activity denied said defendant by the injunction of this court hereinafter granted.

The plaintiff Wallace objects to such listing, and counsel for the telephone company, as amicus curiae, has advised the court that the Jacksonville telephone directory is already in the hands of the printer.

(A) Under the reasonable managerial policy and regulations of the telephone company, it had a discretionary right to refuse to give Folks the presently requested listings sought when Wallace objects thereto (see A-A-, Inc. v. Southwestern Bell (Okla. 1962) 373 P.2d 31; South Dade v. Southern Bell (1965) 25 Fla. Supp. 175), although it is not required to resolve such disputes (see Williamson v. Answerphone and Southern Bell (Fla. DCA-1, 1960) 118 So.2d at 252, and Atlantic Beach Drug v. Campbell and Southern Bell (1964) 25 Fla. Supp. 42).

(B) Telephone companies are subject to reasonable regulations, and in Florida they are subject to the regulation of the Florida Public Service Commission (32 Fla. Jur. 40).

Except insofar as such matters have been regulated by the commission, a utility has the right to prescribe reasonable rules and regulations for the conduct of its business (27 Fla. Jur. 156).

Properly approved tariffs of the telephone company and other utilities bind the customer whether he knows about them or not. See Western Union v. Esteve (1921) 256 U.S. 568, 65 L.Ed. 1094.

There was introduced here tariff of the telephone company approved by the Florida Public Service Commission under which the telephone company was given the right to reject listings which in its judgment were objectionable.

(C) As stated by another division of this court in Hescom v. Southern Bell (1964) 22 Fla. Supp. 2, the court finds that the interests of the general public, particularly the many thousands

of persons and firms whose telephone listings will be changed or added in the new directory, would be so adversely affected that it would create an undue hardship on the general public as well as the telephone company to hold up such directory.

(D) Another division of this court having on June 20, 1968, entered final judgment against Folks and in favor of the telephone company refusing mandamus to require certain but different telephone listings for Folks;

The court specifically finds that the telephone company is not required to give such presently requested listings to said Folks; further that it is a violation of the court's temporary injunction for Folks to seek or have such listings.

3. Having reached the conclusion that the plaintiff has the inherent right to direct his own campaign, select his own "friends" and enjoin any unwanted "help" the court is of the further opinion that the motion to amend the complaint by the addition of defendant, Mrs. Richard M. Harris, should be granted and that the motion to broaden the scope of the existing temporary injunction should likewise be granted in order to make the directions of this court abundantly clear to the defendant Folks, and any and all persons working with said defendant on the projects hereinafter enjoined;

Accordingly, it is adjudged as follows —

1. That the motion of the defendant, Warren H. Folks, to suppress, stay, and/or quash the notice of hearing is denied.

2. That the defendant, Warren H. Folks, is adjudged in contempt of this court for his activity in connection with the proposed "4th of July picnic"; the said defendant, Warren H. Folks, is sentenced to imprisonment in the county jail for a period of thirty days for said contempt, but he may purge himself of contempt by complying strictly with the provisions of this order and imposition of said sentence shall be postponed from day to day.

3. That plaintiff's motion for leave to file amendment to the complaint should be and the same is hereby granted and the clerk of this court is authorized and directed to issue process to Mrs. Richard M. Harris.

4. That defendant, Warren H. Folks, and all persons working in concert with said defendant, should be and they are hereby enjoined and restrained from holding any "4th of July picnic" at 15 North Julia Street, Jacksonville, or elsewhere, for the

express purpose of promoting the candidacy of George C. Wallace in Jacksonville and Duval County.

5. That defendant, Warren H. Folks, and any and all persons acting in concert with said defendant, are hereby directed and required to forthwith close the office located at 15 North Julia Street, Jacksonville, and cease and desist from opening or operating or working in any other place or in any other organization purporting to be an official or unofficial Wallace Campaign Headquarters or organization, without the express written permission of George C. Wallace, or his duly authorized representative. The defendant Folks shall place on the door of the office located at 15 North Julia Street, Jacksonville, a sign reading as follows: "This office is closed temporarily and until further notice" and shall hide from view all campaign literature, pictures, etc., pertaining to the plaintiff Wallace so that none of it can be viewed by any member of the public passing by such office.

6. The defendant, Warren H. Folks, shall submit to this court in writing any future plans or ideas that he may have in connection with the George C. Wallace for President campaign and have said plans and/or ideas approved by the court to avoid the possibility of any future contempt in this regard.

7. That defendant, Warren H. Folks, and all persons working in concert with said defendant, are hereby enjoined and restrained from any fund-raising activities of any kind, the sale of any material bearing the name of Wallace and from receiving or disbursing of funds purporting to be in the furtherance of the campaign efforts of George C. Wallace, the organizing or attempting to organize workers or working with others to accomplish any of the activities herein or heretofore enjoined and restrained by order of this court.

8. Nothing herein shall be construed to prohibit the defendant, Warren H. Folks, or any other person acting alone, from expressing his or her personal private views of George C. Wallace, whether those views be for or against George C. Wallace.

9. The defendant, Warren H. Folks, is enjoined from seeking or having a telephone listing or listings with the Southern Bell Telephone and Telegraph Company in the name of Folks' Campaign Supply Center or any such similar name.

10. The injunction bond heretofore required by this court and filed herein is deemed sufficient to cover the injunction heretofore issued herein and the broadening thereof by this order.