Robert M. SCHNEBERGER, et al., Plaintiffs–Appellants,

v.

W. Randolph WHEELER, et al., Defendants,

United States Trust Company of New York, a New York Corporation, Defendant–Appellee.

UNITED STATES TRUST COMPANY OF NEW YORK, A New York Corporation, Plaintiff–Counterclaim–Plaintiff–Appellant,

v.

Warren J. PLOTNER, Defendant–Counterclaim–Plaintiff–Appellant,

v.

Randolph WHEELER, Andrew A. Levy, and Buckeye Petroleum Co., et al., Counterclaim–Defendants.

Nos. 87–5583, 87–6025.

United States Court of Appeals, Eleventh Circuit.

Nov. 10, 1988.

---

Giselle D. Lylen, Carl H. Hoffman, Hoffman & Hertzig, Coral Gables, Fla., for plaintiffs-appellants.

John T. Kolinski, Shutts & Bowen, Miami, Fla., for U.S. Trust.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HOFFMAN *, District Judge.

EDMONDSON, Circuit Judge:

Appellants allege that U.S. Trust violated the Florida Securities and Investor Protection Act and Section 10(b) of the Securities Exchange Act of 1934. Appellants base additional counts on conspiracy and the Uniform Commercial Code. U.S. Trust's motions for summary judgment were granted in these separate but related cases. We affirm.

I. *Facts*

William Randolph Wheeler and Andrew A. Levy organized Buckeye Petroleum Company, Inc. to form oil and gas limited partnerships. Wheeler and Levy, on behalf of Buckeye, arranged a letter of credit loan program with U.S. Trust, a financial institution, for Buckeye oil and gas limited partnerships. Based on the security to be provided by the promissory notes of investors and letters of credit issued by banks, U.S. Trust proceeded to lend money to limited partnerships formed by Buckeye, Wheeler and Levy. The investors in these limited partnerships, including appellants, never spoke to anyone at U.S. Trust before agreeing to purchase their Buckeye limited partnership interests. U.S. Trust required each appellant to sign an acknowledgement letter by which the signer waived "as against the Bank any defenses, set-offs, counterclaims or other objections to the payment of the Note which they may have against the Partnership."

In October 1981, U.S. Trust received financial statements from Buckeye. Andrew Carstensen, a U.S. Trust officer, made a detailed analysis of the statements. Although Carstensen's analysis was not, on the whole, negative, it did raise questions about the financial solidity of Buckeye. In December 1981, Thurlow West, a vice-president in the personal banking group at U.S. Trust, discussed with Levy an investor suit and a supplier suit against Buckeye.

In the summer of 1983, U.S. Trust agreed to extend for one year its loans to the limited partnerships. Buckeye gave all investors, including the appellants, the option of paying off the entire amount due on their promissory notes or executing new promissory notes to extend the letters of credit. Michael Berry elected to pay off his promissory note. Sheldon Haffner and Larry Mizrach elected to allow U.S. Trust to draw on its letters of credit to pay off their notes. All other appellants executed new promissory notes. Appellant Warren

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

Plotner eventually failed to pay the balance on his note.

Appellants filed suit (*Schneberger et al., v. Wheeler*) alleging that U.S. Trust participated in the illegal sale of the limited partnership interests promoted by Wheeler, Levy and Buckeye. The district court granted U.S. Trust's Motion for Summary Judgment on these claims. In a separate suit, U.S. Trust sued Plotner on his promissory note, and the trial court granted U.S. Trust's Motion for Summary Judgment. Although the Plotner case was never formally consolidated with the earlier Schneberger action, the trial court in the Plotner proceedings predicated its summary judgment upon the *res judicata* effect of the summary judgment entered in the Schneberger suit. The district court entered final judgment in favor of U.S. Trust and granted U.S. Trust's Motion for Certification pursuant to Rule 54(b).

## II. *Securities Law Claims*

### A. Florida Security and Investor Protection Act

█ Appellants claim that U.S. Trust violated Fla.Stat. section 517.07 and Fla.Stat. section 517.301. Fla.Stat. section 517.211 extends liability under these sections to a "person making the sale," a "person ... selling a security," and a "director, officer, partner, or agent of or for the seller." Because there is no evidence that U.S. Trust was an offeror, a seller or an agent of a seller, appellants' claims under the Florida Security and Investor Protection Act are without merit.

### B. Section 10(b)

*Woodward v. Metro Bank of Dallas* sets forth the elements necessary to establish liability for damages as an aider and abettor of a violation of section 10(b) or Rule 10b–5: "[A] person may be held as an aider and abettor only if ... the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation." 522 F.2d 84, 94–95 (5th Cir.1975); *Woods v.*

*Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1009 (11th Cir.1985).

█ *Woodward* and *Woods* make clear that knowledge of both the fraudulent scheme and of one's own role in that scheme is required to satisfy the test for aider and abettor liability. *Woods,* 765 F.2d at 1010. This knowledge may be inferred from circumstantial evidence. *Woodward,* 522 F.2d at 96. As evidence of U.S. Trust's scienter, appellants point to the following facts: (1) U.S. Trust knew that its loan program would make the investment more attractive; (2) U.S. Trust had Buckeye's financial statements which raised questions about the financial solidity of Buckeye; (3) U.S. Trust knew that Buckeye had been sued by an investor and a supplier; and (4) U.S. Trust insisted that appellants execute acknowledgment letters.

The degree of scienter necessary to make out a section 10(b) claim varies with the circumstances of each case:

> For a defendant whose only role is to remain silent in the face of securities violations, liability might depend upon a duty owed to the other parties.... A defendant who is not under any duty to disclose can be found liable ... only if he acts with a high degree of scienter, that is, with a "conscious intent" to aid the fraud. ... [L]iability could be imposed upon an aider and abettor who is under a duty to disclose if he acts with a lesser degree of scienter. For an aider and abettor who combines silence with affirmative assistance, the degree of knowledge required should depend upon how ordinary the assisting activity is ...

*Woods,* 765 F.2d at 1010.

█ Appellants argue that U.S. Trust did more than remain silent in the face of securities violations. Although U.S. Trust's loans did make the limited partnership interests more attractive to investors, this "participation" in the alleged violation was slight at best. U.S. Trust had no duty to disclose based upon its role as lender. The question is therefore whether there is a genuine issue that U.S. Trust possessed a degree of scienter sufficient, in the light of its slight level of participation in the al-

leged wrongdoing, for aider and abettor liability. We hold that there was not. The evidence of scienter cited by appellants shows at most that U.S. Trust knew about Buckeye's shaky financial situation. Knowledge of Buckeye's weak financial situation amounts neither to a duty to disclose this information nor to knowledge of fraud. There is no genuine issue that U.S. Trust possessed a mix of scienter and participation sufficient for aider and abettor liability under section 10b–5.

## III. *Breach of Warranty*

■ Appellants claim also that U.S. Trust is liable for wrongfully calling the investor's letters of credit and seeking to enforce the promissory notes. Appellants contend that U.S. Trust warranted that the promissory notes were valid, but that the notes were void as products of an illegal transaction. If a contract or note is void *ab initio*, it is a nullity. This defense applies even against a holder in due course.

### A. Validity of Promissory Notes

■ Appellants cite *Frye v. Taylor*, 263 So.2d 835 (Fla. 4th Dist. Ct. App. 1972), and *Edwards v. Trulis*, 212 So.2d 893 (Fla. 1st Dist. Ct. App. 1968). These cases hold that contracts made in violation of law are void. In *Frye*, the plaintiff sponsored the defendant's elevation to a directorship position in an illegal pyramid scheme. The defendant executed a promissory note to secure a loan made by the plaintiff to enable the defendant to purchase the directorship. The court held that "[s]ince the note in question was given in consideration of participation in an illegal transaction the obligation evidenced thereby is a nullity and is of no legal effect." *Frye*, 263 So.2d at 840. The court hoped to deter illegal contracts by refusing to enforce them. *Id.*

Similarly, in *Edwards* the court refused to allow an unlicensed stockbroker to enforce an oral brokerage contract providing for commissions. Unlike the contract in *Edwards*, the notes at issue in the instant case were not given in violation of any statute. Limited partnerships for oil and gas exploration, unlike pyramid schemes

(*Frye*) or unregistered dealing in securities (*Edwards*), are lawful. The deterrence rationale was especially applicable upon the facts of *Frye* because the lender in that case was plainly a co-participant in the illegal scheme. In fact, the lender recruited the borrower to participate in the scheme. The purpose served in *Frye* would not be equally served in the instant case where U.S. Trust's involvement in the alleged illegal scheme is minor and lawful.

■ Nor are the promissory notes void under section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b) which provides in pertinent part: "Every contract made in violation of any provision of this chapter ... shall be void ... as regards the rights of any person who ... shall have acquired any right thereunder with actual knowledge of the facts by reason of which the ... contract was in violation...." Section 29(c) provides further: "Nothing in this chapter shall be construed ... to afford a defense to the collection of any debt ... by any person who shall have acquired such debt ... in good faith for value and without actual knowledge of the violation of any provision of this chapter ... affecting the legality of such debt...." 15 U.S.C.A. section 78cc(c). Any possible uncertainty as to the meaning of these sections was eliminated by the Supreme Court in *Mills v. Electric Auto–Lite Company:*

> This language establishes that the guilty party is precluded from enforcing the contract against an unwilling innocent party, but it does not compel the conclusion that the contract is a nullity, creating no enforceable rights even in a party innocent of the violation. The lower federal courts have read [section] 29(b) ... as rendering the contract *merely voidable* at the option of the innocent party.... This interpretation is eminently sensible.

396 U.S. 375, 387–88, 90 S.Ct. 616, 623, 24 L.Ed.2d 593 (1970) (emphasis added) (citations and footnotes omitted). Even if the notes were executed in connection with unenforceable agreements, they were voida-

ble, not void nullities. The holder-in-due-course doctrine may therefore apply.

### B. Holder in Due Course

■ Appellants argue two grounds for denying U.S. Trust the protection afforded a holder in due course: bad faith and the close connection doctrine. Because appellants' strongest evidence of bad faith is insufficient to constitute evidence that U.S. Trust knew that Buckeye was guilty of fraud, the bad faith ground is without merit, and we turn to consideration of Florida's close-connection doctrine.

■ The close-connection doctrine is an exception to the holder-in-due-course defense when a financial institution has a close working relationship with the seller in a consumer credit transaction. *First New England Financial Corporation v. Woffard*, 421 So.2d 590 (Fla. 5th Dist. Ct. App. 1982). In a commercial setting, more than just a close connection must be shown before the assignee will be denied the status of holder in due course. *Equico Lessors, Inc. v. Ramadan*, 493 So.2d 516 (Fla. 1st Dist. Ct. App. 1986). "We have not been able to locate any case in which the court has invalidated a waiver of defense clause in a commercial transaction based on close connections alone." *Leasing Service Corp. v. River City Construction, Inc.*, 743 F.2d 871, 876 (11th Cir.1984). The close-connection doctrine does not apply to this commercial transaction: U.S. Trust was not formed and does not exist exclusively to finance Buckeye's partnership shares; Buckeye is in no sense owned or controlled by U.S. Trust; also, U.S. Trust did not affirm any promises made by Buckeye or solicit investors for Buckeye. Because U.S. Trust is a holder in due course of the promissory notes, none of appellants' defenses, which may be valid as against Buckeye, are available against U.S. Trust.

### IV. *Conclusion*

Appellants claim also that there was circumstantial evidence to support a finding of conspiracy. As evidence of a conspiracy appellants present these facts: (1) U.S. Trust's loans made the limited partnership interests more attractive to investors; and (2) U.S. Trust knew of Buckeye's financial difficulties. We hold that this "circumstantial evidence" is insufficient for us to infer an agreement between Buckeye and U.S. Trust.

The summary judgment "standard requires that we resolve all reasonable doubts in favor of the nonmoving party, ... but it does not require us to resolve *all* doubts in such a manner." *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987). Appellants—who would bear the burden of proof at trial—have failed to present evidence adequate to raise a genuine issue as to the essential elements of either their securities or commercial paper claims. *See generally Brown v. City of Clewiston*, 848 F.2d 1534, 1537, 1540 n. 12 (11th Cir.1988) (discussing standard of review in summary judgment cases).

Accordingly, the trial courts' orders granting summary judgment in favor of U.S. Trust are AFFIRMED.